## The People vs. Simon B. Jenness.

On a trial for incest, alleged to have been committed by defendant with his sister's daughter, testimony as to his admission that he was the brother of the girl's mother, and his treatment as such in her father's family, is competent evidence.

Marriages between parties within the prohibited degrees of consanguinity are equally prohibited, and sexual intercourse incestuous, whether the parties or their parents are legitimate or illegitimate, or of the whole or the half blood.

Under the Constitution and Statutes of this State, a party has no right to question a witness with respect to the belief of the latter in a Supreme Being, or to former statements in reference to such belief. And, therefore, where such questions have been asked and answered, the party can not be permitted to impeach the witness by proving previous statements with reference to such belief, which the witness, in answer to such questions, denied having made.

5 MICH. — U.

THE PEOPLE *vs.* JENNESS.

As a general rule, in criminal cases, the commission of other, though similar, offenses by the defendant can not be proved for the purpose of showing that he was more likely to have committed the offense for which he is on trial, nor as corroborating the testimony relating to such principal offense.

But, in case of a crime consisting of illicit sexual intercourse, which can only be committed by the concurrent act of two persons of opposite sexes, evidence of previous familiarities and acts of intercourse is admissible, as tending, necessarily, to show concert and a common design of both parties to commit the act charged, and habitually to indulge their criminal desires as opportunity might offer. Such evidence proves a greater probability of the commission of the offense charged, by showing the woman's willingness to yield to the man's embraces, thus removing a chief obstacle to such intercourse, and furnishing a better opportunity, greater temptation or motive, and superior facilities for the indulgence of his passion, in accordance with such common design.

This is not showing the commission of other merely similar offenses, but a repetition of the same offense between the same parties, and, in all its criminal features, necessarily identical.

In any case where a witness has testified to a fact or transaction, which, standing alone and entirely unconnected with anything which led to or brought it about, would appear in any degree unnatural or improbable in itself, without reference to the facts preceding and inducing the principal transaction, and which, if proved, would render it more natural and probable; *such* previous facts are not only admissible and relevant, but they constitute a necessary part of such principal transaction—a link in the chain of testimony, without which it would be impossible for the jury, properly, to appreciate the testimony in reference to such principal transaction.

Especially is such evidence proper when the act testified to is unlawful intercourse between the sexes, which, standing alone as an isolated transaction, without evidence of the previous facts which led to it, would appear as the first act of sexual intercourse, or even of improper familiarity, to which the woman had ever yielded, and, as such, so highly improbable that, to most minds, its recital would constitute its own refutation.

And when the man is on trial for incest, and his accomplice in the crime is called as a witness against him, and testifies to the commission of the crime charged, it is as competent to prove by such accomplice, as by any other witness, the previous familiarities and intercourse between them which tend to throw light upon the transaction in question, and explain and render more natural and probable that which, without such explanation, would appear unnatural and improbable.

It is not error for which a verdict against the defendant will be set aside, that the Prosecuting Attorney, in his argument to the jury, was permitted by the Court to take an erroneous view of the law, if the Court, in the charge to the jury, corrected the error, and truly stated the law on the point.

Though the time be stated in an information for incest, the prosecutor may, before the evidence is introduced, select any one act of criminal intercourse which occurred within the jurisdiction of the Court, and within the period of the statute of limitations applicable to the offense, as the one upon which a conviction will be sought. But when evidence has been introduced tending directly to the proof of one act, and for the purpose of procuring a conviction upon it, the prosecutor is deemed to have made his election, and that act must, from that moment, be considered the one *charged* against the defendant, and for which alone he can be found guilty.

THE PEOPLE vs. JENNESS.

The credibility of an accomplice, like that of any other witness, is exclusively a question for the jury, who *may* convict on such testimony alone, without confirmation; and the Court should not advise the jury not to do so. While it is the duty of the judge to comment on the nature of such testimony, as the circumstances of the case may require, and to point out [the various grounds of suspicion that may attach to it, and call attention to the various temptations under which such witness may be placed, yet the Court has no more right directly to advise the jury to give a verdict of guilty or not guilty than the jury have to advise the judge how to decide upon a matter of law.

*Heard June 5th and 8th. Decided July 10th.*

On exceptions from the Recorder's Court of the City of Detroit.

The information against defendant contained one count only, charging him with the commission of incest with Delia E. Ashcroft, the daughter of his sister, Martha Jane Ashcroft, at the city of Detroit, on the 24th day of February, 1858.

On the trial in the Court below, the prosecution proposing to place said Delia on the stand as a witness, the defendant's counsel examined her on her *voir dire* as to her religious belief, and she testified that she believed in the existence of a Supreme Being, and always had; and never to her knowledge had said that she did not. She was then sworn in chief, and gave evidence that her mother was Martha Jane Ashcroft. She was then asked whether she had at any time heard defendant say what relation he was to her mother; which question was objected to, the objection overruled, and exception taken. The witness answered that she had heard him say he was her mother's brother.

The witness then testified that on the 17th day of January, 1858, defendant called at her room in the Howard House, in the city of Detroit, and then and there had sexual intercourse with her.

The witness being then asked in reference to other acts of sexual intercourse between herself and the prisoner, the counsel for the prisoner objected to the giving of such testimony as proof of the charge contained in the information. The Court overruled the objection, and allowed the prose-

cution to give evidence of other acts of sexual intercourse between the prisoner and the witness, not as substantive offenses, but in explanation and in corroboration of the evidence of the act charged in the information; to which the prisoner, by his counsel, objected, and an exception was taken to such ruling.

The witness then testified to numerous acts of sexual intercourse between herself and the prisoner, at various places within and without the said city of Detroit, commencing in 1853, and continuing to the time of the act first sworn to as above stated. All of which testimony was taken subject to the objection of defendant's counsel.

The witness was then asked, " Was the prisoner acknowledged and treated in your father's family as the brother of your mother?" To which question counsel for prisoner objected. The Court overruled the objection, and an exception to such ruling being taken, the witness replied, "He was, always."

On cross-examination by defendant's counsel, the witness testified that she believed in a God, and had never to her knowledge expressed her disbelief in a God; and that she remembered a conversation at the house of John S. Jenness, in the spring of 1857, and that she had not in that conversation disavowed her belief in a God. The witness was further asked if, in a certain conversation — the time, place, &c., being stated, in order that the witness might be impeached, if necessary — she had not disavowed a belief in a Supreme Being? Which question was objected to, and the objection sustained, and an exception to the ruling taken.

The prosecution then called Martha Jane Ashcroft, who testified that she was the mother of the witness, Delia E. Ashcroft; that she knew the defendant, and that he is her brother, and as such has always been acknowledged and treated in the family.

Acts of improper and indecent familiarity between defendant and said Delia, at various times before the commission

of the alleged act at the Howard House, were also sworn to by the father and mother of said Delia, and by other witnesses called by the prosecution.

On the part of defendant, Lucy J. Jenness was called as a witness, by whom defendant's counsel proposed to prove that, on the occasion referred to by her in her cross-examination, the witness, Delia E. Ashcroft, had disavowed a belief in God, or a Supreme Being; which testimony was objected to by the prosecution. The Court sustained the objection, on the ground that under the Constitution and laws of Michigan, the religious belief of the witness could not be inquired into; and exception was taken.

The Prosecuting Attorney, after the evidence was closed, proceeded to sum up for the People, and in the course of his remarks argued to the jury that the evidence would authorize them to find the defendant guilty of the act of incestuous intercourse testified to have occurred at the Howard House on the 17th of January, 1858. He further proceeded to state and contend before the jury that if they were not satisfied from the testimony that the alleged act at the Howard House was proven, it was competent for them to find the defendant guilty of any other act which they should be satisfied from the testimony had been committed between defendant and said Delia, at any other place within the city of Detroit, at any time within six years before the filing of the information.

Whereupon, the counsel for defendant interrupted the Prosecuting Attorney, and objected to this statement and argument to the jury, on the ground, that though time, as alleged in the information, was not material, yet, as the information charged a single act, it was necessary that the prosecution should select and rely on some particular act as the one intended to be charged in the information, and to indicate what act was claimed to be the one charged in said information; and that it was not competent to rely on various distinct acts, done at different times and places, and to leave

such various distinct acts to the jury, from which they might select any one committed within said period of six years, in said city, which they should deem to have been proven before them. But the Court overruled the objection, and said that the Court should, when it came to instruct the jury, charge that they might so select any of such acts within said period of six years, and allowed the Prosecuting Attorney to proceed and argue to the jury as at present. To which ruling the defendant excepted, and the Court noted such exception.

The counsel for the defendant then requested the Recorder to charge the jury, —

1. That, as the information charged but one act of incest or incestuous intercourse, and contained but one count, the prosecution must, in its evidence, be confined to the proof of such one act, and can not give in evidence testimony relative to other like acts between the parties, at different times and in different places. Which charge the Court refused to give, and defendant excepted.

2. That, although the prosecution was not required to prove the offense to have been committed on the day alleged in the information, yet, under the information in this case, it must select the act relied on as constituting the offense charged, and can not submit any other act to the jury for their verdict under this information. Which charge the Court refused to give, and defendant excepted.

3. That, the prosecution having opened its evidence by testimony tending to prove that an act of incestuous fornication was committed by the defendant with Delia E. Ashcroft, named in the information, on the 17th January, 1858, at the Howard House, in the city of Detroit, Wayne county; and the prosecution still insisting that such act has been proven, and that the defendant is liable to be found guilty for such act, that this must be taken to be the offense charged in the information, and is the only one which can be submitted to the jury for their verdict, and that the jury can render their verdict only upon such charge. Which charge the Recorder refused to give, and defendant excepted.

4. Counsel requested the Court to advise the jury that they ought not to convict the defendant upon the evidence of the complaining witness, Delia E. Ashcroft, unless she is corroborated in some matter material to the issue. Which advice the Court refused to give, and defendant excepted.

The Recorder then charged the jury, among other things,—

That the witness, Delia E. Ashcroft, by her own testimony, is shown to have been imprudent, if not criminal, in her intercourse with men; that it is her character for truth and veracity from which the jury are to decide whether or not her evidence is entitled to credit; and if the jury believe her to be a person of bad moral character, they may take that into consideration in weighing the probability of the testimony.

That Mr. and Mrs. Ashcroft, and other witnesses, had testified to acts of improper intimacy between defendant and said Delia; that every witness who testified at all on the subject, declared as to the intimate relations which existed between them; that the jury had the evidence of Delia herself, and of the other witnesses, who swear to the closest kind of intimacy; and that from this testimony he left it to the jury to say whether there was an intimacy between defendant and said Delia, or not, or whether the intimacy was such as is usual between an uncle and his niece, and was altogether innocent.

That the witness, Delia E. Ashcroft, was to be viewed in the light of an accomplice—she was a *particeps criminis* in this crime, if any crime has been committed. That, if the jury believed her evidence, it was competent to convict on that alone. That the rule of law was, that verdicts should be given on testimony which produced conviction in the minds of the jurors, and if the uncorroborated testimony of an accomplice had that effect, then it was competent to convict on her testimony alone. The law did not require that the testimony of an accomplice should be corroborated in every particular, even where the jury required corroboration; but it was sufficient if it was corroborated in any one

material particular. That great caution was to be used in considering the evidence of an accomplice, and in this case the jury were to bear in mind, that the charge was one easily made, hard to be proved, and harder still to be disproved, though the defendant was never so innocent. That the Court would not charge them to believe or disbelieve the witness, Delia E. Ashcroft; and that if, from her evidence and the evidence of the other witnesses, the jury believed the defendant guilty, they would say so in their verdict.

To all of which charge, and each portion of which, the defendant, by his counsel, excepted.

The Court further charged the jury:

1. That, although the information charges the prisoner to have committed the crime of fornication or incest on the 24th day of February, 1858, the time is immaterial, and the jury are at liberty to find the prisoner guilty of the offense charged, if they are satisfied from the evidence, that the same was committed in the city of Detroit within the period of six years previous to the time of filing the information.

2. That the evidence of other acts of criminal connection than the one alleged in the information, is admissible only to corroborate the testimony as to the offense charged.

3. That, though the information alleges that the prisoner had criminal connection with his niece, Delia E. Ashcroft, in this city, on the 24th day of February, time and place are immaterial, and the jury may find him guilty, if from the evidence they believe that the act was not committed at the Howard House, but was committed in some other place in the city of Detroit, within the period of six years prior to the time of filing this information.

4. That the jury must be satisfied, beyond a reasonable doubt, of the prisoner's guilt, in order to warrant a conviction, and a simple preponderance of evidence in favor of the prosecution is not sufficient.

To all of which charges and rulings of the Court, the defendant excepted.

THE PEOPLE *vs.* JENNESS.

*Gèo. V. N. Lothrop, Moore & Blackmar,* and *Wm. Gray,* for defendant:

1. The statement of defendant that the mother of the complaining witness was his sister, and evidence that he was treated in her father's family as the brother of her mother, were improperly admitted. For anything in his statement, he might be brother of the half blood. The marriage of his parents should be proved as a fact, as in bigamy and other similar cases. — *State vs. Roswell,* 6 *Conn.* 447. The manner in which he was treated in the family was clearly no proof of relationship.

2. The provisions of the Constitution (*Art. VI.* § 34) and statutes (*Comp. L.* § 4336) do not exclude inquiry as to whether the witness has any religion, but only as to his peculiar "opinions," or creed.

3. The testimony of Delia E. Ashcroft to the commission of other similar acts, was inadmissible to corroborate her evidence as to the commission of the act at the Howard House. Evidence of former like offenses is not admissible to prove the one charged. — 2 *Russ. on Crimes,* 772; *Ros. Cr. Ev.* 81; *Walker vs. Commonwealth,* 1 *Leigh,* 574; *Kinchelow vs. State,* 5 *Humph.* 9; *Commonwealth vs. Miller,* 3 *Cush.* 351; *Commonwealth vs. Wilson,* 2 *Cush.* 590.

Proof of a tendency towards such criminality is not admissible. — *Ros. Cr. Ev.* 81; 1 *Phil. Ev.* 181. Where intention, or guilty knowledge, or motive is material, evidence of other distinct acts may be given — not at all as proof of the act in question, but, supposing the fact to be proven *aliunde,* then to throw light on its true character. — 3 *Greenl. Ev.* §§ 15, 19; *Ros. Cr. Ev.* 89, *et seq.* This rule applies only to cases where guilty knowledge or actual intent is material, and must therefore be affirmatively proven. — *Rex vs. Woodfall,* 5 *Burr.* 2667. And it is said, that the rule ought not to be enlarged. — *Regina vs. Oddy,* 5 *Cox C. C.* 210, *cited in* 3 *Greenl. Ev.* § 15, *Note.*

Evidence of facts not within the issue can not be given solely to corroborate a witness. — *Rex vs. Webb*, 6 *C. & P.* 595; *Rex vs. Wilkes*, 7 *C. & P.* 272; *Commonwealth vs. Miller*, 3 *Cush.* 252; *Commonwealth vs. Bosworth*, 22 *Pick.* 399; *State vs. Wallace*, 9 *N. H.* 517.

4. The Recorder permitted the Prosecuting Attorney to argue to the jury, that they might, if they believed the evidence sufficient, find the defendant guilty of the alleged act at the Howard House, or of any other act committed in the city of Detroit within six years before the filing of the information. And by his charge, he, in effect, left it to them to select any one act at their pleasure which they should deem to have been committed in the city of Detroit within six years. The view of the Recorder on this point was in defiance both of principle and authority. When the prosecution, by the evidence, has pointed the indictment to a particular act, it is regarded as always having referred to the act to which it is applied by the evidence; and the Court will not even allow it afterwards ·to be applied to any other act. — *State vs. Bates*, 10 *Conn.* 372; *Commonwealth vs. Horton*, 2 *Gray*, 355. The like rule prevails in civil cases. — *Stante vs. Pricket*, 1 *Campb.* 473; *Pierce vs. Pickens*, 16 *Mass.* 472; *Hume vs. Oldacre*, 1 *Stark.* 351.

5. The Court erred in declining to advise the jury that they ought not to convict the defendant upon the evidence of the complaining witness, Delia E. Ashcroft, unless she is corroborated in some matter material to the issue. The Court was not asked to say that it was not competent for the jury to convict on the unsupported testimony of the *particeps criminis*. We concede that the law is settled otherwise. But we asked the Court to advise the jury as to their duty in such a case. The Court refused, and contented itself with some general remarks on the subject. What we claim is that we had a right to the direct advice of the Court, applied to the witness in question, and that the refusal was a violation of duty on the part of the judge. See the result of the au-

thorities collected in the following text books : — *Ros. Cr. Ev.* 155, 156, 5th *Am. Ed.*; 1 *Greenl. Ev.* § 380; *Whart. Am. Cr. L.* §§ 785 *to* 789.

If such duty rests on the judge, we suppose there can not be much doubt but a new trial will be ordered where that duty is deliberately repudiated.

*J. M. Howard, Attorney General,* for the People:

1. Proof of defendant's admission of his relationship to the mother of the prosecutrix, was proper evidence. This was merely proving, by his admission, a relationship where marriage is prohibited, and carnal knowledge becomes incest under the statute. Such admissions are proof of marriage even in cases of bigamy, adultery, and *crim. con.* — 8 *S. & R.* 160; 7 *Greenl.* 57; 4 *Comst.* 235; *Whart. Cr. L.* § 2652; 1 *Greenl. Ev.* §§ 103, 104. And evidence of the manner in which defendant was treated in the family of the girl's father was admissible, as tending to prove the relationship.

2. Evidence of other acts of intercourse than the one charged was proper. Such acts are but cumulative and corroborative evidence of the *corpus delicti.* — *Lawson vs. State,* 20 *Ala.* 75; 2 *Greenl. Ev.* 31; *State vs. Wallace,* 9 *N. H.* 517; *Whart. Cr. L.* § 2653. Such familiarities are always given in evidence, and the jury are to judge of their weight. Although remote in point of time, they are not therefore incompetent. — 1 *Cush.* 394; 14 *Pick.* 518.

3. The Court correctly refused to permit the question to be put to the prosecutrix, for the purpose of being contradicted if she answered in the negative, whether she did not on a particular occasion say that she did not believe in a Supreme Being. — *Const. Art. VI.* § 34; *Comp. L.* § 4336. And if the witness herself could not be questioned on the subject, surely no one else could. To allow her credit to be impeached by the testimony of others, while no question can be asked her on the subject, would be to allow her to be attacked without the right of self-defense, and would operate as a complete subversion of the policy of the statute.

4. The Court was right in refusing to stop the Prosecuting Attorney in his summing up to the jury, while stating to them that they would be authorized to convict the prisoner, should they find he had committed any one of the incestuous acts in proof within six years before filing of the information. Evidence of several acts was admissible to establish the guilt of the prisoner. — 14 *Pick.* 518. He has sustained no injury by its admission in reference to future prosecutions, for as the evidence left it uncertain upon which of the several criminal acts the government relied for a conviction, each being insisted upon as evidence of his guilt under the information, the plea of *autrefois convict* will be available to him against any future attempt to convict him of any one of them. And if the evidence was competent for that purpose, the prosecution could not be required to select which of the particular acts they would rely upon. This may be done where the indictment contains several charges, which are distinct, and do not grow out of the same transaction. — *Whart. Cr. L.* § 423, *and cases cited.* But that it is in the power of the Court to require the counsel to "select and rely upon some one particular act as the one intended to be charged," where all are admissible, is believed to be without support from adjudged cases.

Again: The cases already cited show that these acts were admissible as corroborative evidence. The prosecutrix was an accomplice in the crime, and it became the government to furnish such evidence, if in its possession. — 1 *Greenl. Ev.* §§ 380, 381.

But if the Prosecuting Attorney took an erroneous view of this evidence, it is no ground for setting aside the verdict that the Court refused to restrain his comments. The farthest that courts have gone in restraining counsel is to stop them when they comment upon facts that are not in evidence at all. — *Carne vs. Litchfield,* 2 *Mich.* 340; *Rose vs. Blackmore,* 21 *Eng. C. L.* 465; *Logan vs. Monroe,* 20 *Maine,* 257.

Even the charge of the Court upon matters of fact, or

the weight of evidence, is no ground of error. — *Carver vs. Jackson*, 4 *Pet.* 80; 14 *Wend.* 554; *Paul vs. White*, 5 *C. & P.* 237.

5.. The defendant complains that the Court refused to "advise" the jury that they ought not to convict unless the testimony of the prosecutrix was corroborated "*in some matter material to the issue.*" The credit to be given to an accomplice is exclusively for the jury; the Court are not bound to comment upon its weight, and their refusal to do so. is no error, it being mere matter of discretion. — 1 *Greenl. Ev.* §§ 379, 380, 381; 7 *C. & P.* 162, 272; *People vs. Costello*, 1 *Denio*, 83. But in his charge to the jury, the Recorder states the rule with accuracy and fairness.

CHRISTIANCY J.:

This cause comes to this Court from the Recorder's Court of the City of Detroit.

The charge against the defendant in the information (which, except as to matters of form, is to be treated as an indictment) is, that the defendant, on the 24th day of February, 1858, at the city of Detroit, did commit fornication with Delia E. Ashcroft, by then and there having carnal knowledge of the body of the said Delia E. — the said defendant and the said Delia E. being then and there within the degrees of consanguity within which marriages are prohibited and declared by the laws of this State to be incestuous and void; the said Delia E. being the niece of the said defendant, and being the daughter of Martha Jane Ashcroft, who was the sister of the defendant — contrary to the form of the statute, &c.

The defendant was tried in the Recorder's Court, before a jury, and found guilty.

On the trial, numerous exceptions were taken by the defendant to the ruling of the Recorder on the admission and rejection of evidence, his refusal to charge the jury as requested, and to the charge as given. Upon these exceptions,

the defendant moved the Recorder's Court for a new trial; which being refused, the exceptions and the record are removed to this Court, in pursuance of Chap. 197 of Compiled Laws, and the Revised Charter of the City of Detroit, Sec. 24, "Recorder's Court."

Many of the exceptions in the Court below were abandoned, or not urged, in this Court. We shall notice only those relied upon on the argument.

·The first of these exceptions raises the question whether the testimony .of Delia E. Ashcroft, showing the admissions of the defendant that he was her mother's brother, and his treatment as such in· her father's family, was properly admitted. This is an objection to the competency, not to the sufficiency of the evidence. We think the objection wholly untenable, and that the evidence was properly admitted. Neither the question of legitimacy, nor of actual marriage, is properly involved in the case. The charge is sexual intercourse between persons within the ·degrees of consanguity within which marriages are prohibited. By reference to the statute prescribing these degrees (*Comp. L. Chap.* 107, §§ 3, 4), it will be seen that no man is. permitted to marry his sister's daughter, and no woman her mother's brother. And we think it quite clear that such marriages are equally prohibited whether the parties or their parents are legitimate or illegitimate, or of the whole or the half blood. And the same may be said of the relationship between the defendant and his sister Mrs. Ashcroft; [whether brother and sister of the whole or half blood, legitimate or illegitimate, a marriage between him and the daughter of his sister, would, we think, be within the prohibition of the statute.—See *Bishop on Marriage and Divorce,* §§ 216, 217; 2 *Bishop Cr. L.* § 15: and as to the admissibility of such evidence, 1 *Greenl. Ev.* §§ 104 *to* 106; *Clayton vs. Wardell,* 4 *Comst.* 235. No· objection seems to have been made, and none could properly have been made, to the testimony of Mrs. Ashcroft, the mother of Delia and sister of defendant, which clearly and directly proved the relationship.

The second exception is to the ruling of the Court in excluding the testimony offered by the defendant to impeach the testimony of Delia E. Ashcroft, in reference to her belief in a Supreme Being, and previous statements which she denied having made in reference to such belief. This exception is based upon the hypothesis that the witness Delia could herself be properly interrogated upon the subject of such belief, and that it was competent to show her disbelief, to impair her credibility.

The Constitution, Art. VI., § 34 declares that "No person shall be rendered incompetent to be a witness on account of his opinions on matters of religious belief." This refers only to the competency, and not to the credibility of a witness. But section 4336 of Compiled Laws goes much farther, and provides that "No person shall be deemed incompetent as a witness in any court, matter, or proceeding, on account of his opinions on the subject of religion, nor shall any witness be questioned in relation to his opinions thereon, either before or after he shall be sworn." Under this section, it was clearly incompetent to question the witness in this case, in reference to her belief in a God, unless it can be shown that belief or disbelief in a God has no reference to "opinions on the subject of religion." Belief is a stronger term than opinion, and necessarily includes the latter. Belief or opinion in reference to the existence or non-existence of a Supreme Being, is, we think, not only a belief or opinion "on the subject of religion," but on the most important of all subjects of religion, and that which controls and gives form to all other religious opinions. We think, therefore, it was clearly the intention of the Legislature to prevent the first step, and every subsequent step, in all inquiries of this kind; that the question was therefore improperly addressed to Miss Ashcroft; that her answer was not evidence in the case; and that the Recorder properly excluded the evidence offered to contradict her.

The third exception relied upon is to the admission in

evidence of other previous acts of sexual intercourse between the defendant and said Delia, at various times, within and without the city of Detroit, from the year 1853 down to about the time of the act of intercourse between them at the Howard House on the 17th of January, 1858, to which she had already testified, and upon which the prosecution relied for a conviction. The evidence of these previous acts was admitted by the Recorder "not as evidence of substantive offenses, but in explanation and corroboration of the evidence of the act charged in the information."

The general rule in criminal cases is well settled, that the commission of other, though similar offenses, by the defendant, can not be proved for the purpose of showing that he was more likely to have committed the offense for which he is on trial, nor as corroborating the testimony relating to the commission of such principal offense. But the courts in several of the States have shown a disposition to relax the rule in cases where the offense consists of illicit intercourse between the sexes; and it is principally to the American cases that we are to look for authorities upon this subject, as such intercourse is not generally rendered criminal in England, or prosecuted by indictment; being only of ecclesiastical cognizance.

In Massachusetts it has been held (*Commonwealth vs. Merriam*, 14 *Pick.* 518) that evidence of this character was admissible to corroborate the testimony of a witness who had testified to subsequent acts of adultery, for which the defendant was on trial. And the reasoning of the Court goes to show that such evidence tended to corroborate the witness by its tendency to show that the offense charged had been committed. The man alone was on trial for adultery, and the Court remark: "The circumstances thus proved were such as naturally to excite in the mind a belief that a woman who would so conduct herself would be more likely to commit the facts alleged against her than if her deportment had been modest and discreet."

In *The State vs. Wallace*, 9 *N. H.* 517, on an indictment for adultery, evidence of previous acts of improper familiarity was held admissible "as having a tendency to render it more probable that the act charged in the indictment was committed." And referring to the case of *Commonwealth vs. Merriam*, above quoted, they say that is an authority "except that in that case there was an attempt to impeach the witness who gave more direct evidence of the fact of adultery; but its admissibility does not depend on an attempt to impeach, but it has a tendency to establish the facts"; and they cite 2 *Stark. Ev.* 440; 2 *Yeates*, 466.

In *Lawson and Swinney vs. The State*, 20 *Ala.* 65, which was an indictment for living together in fornication within a specified period, evidence of former acts was held admissible, though not within the period, and for which the parties could not have been found guilty under that indictment. The Court say: "In all cases, whether civil or criminal, involving a charge of illicit intercourse within a limited period, evidence of acts anterior to that period may be adduced in connection with, and in explanation of, acts of a similar character occurring within that period, although such former acts would be inadmissible as independent testimony, and if treated as an offense, would be barred by the statute of limitations."

We think there is much good sense in these decisions, and that a crime consisting of illicit sexual intercourse, like the present, involves different principles in this respect, and should be governed by different rules from those which apply to offenses generally, or perhaps to any other class of offenses. This offense can only be committed by the concurrent act of two persons of opposite sexes; and the assent or concurrence of the one is as essential to the commission of the offense as that of the other; and, as a general rule, *both* must be guilty, or *neither*.

– In the case of an indictment against the man for such intercourse (and it might be the same if the woman were

on trial, though the inference would be less strong), previous
familiarities, and the general or habitual submission of the
female to his sexual embraces, must, in the nature of things,
tend to render it much more probable that the like inter-
course took place on the occasion charged—the opportunity
being shown. And such is the force and ungovernable na-
ture of this passion, and so likely is its indulgence to be
continued between the same parties, when once yielded to,
that the constitution of the human mind must be entirely
changed before any man's judgment can resist the force of
such an inference to be drawn from previous acts of intercourse
between the same persons. See the force of such evidence
illustrated in *Weatherly vs. Weatherly*, 29 *Eng. L. & Eq.* 605.
This is not showing the commission of other merely sim-
ilar offenses, but a repetition of the same offense between
the same persons, and in all its criminal features necessarily
identical.

Again: Such previous acts necessarily show concert and
a common design of both the parties to commit the act
charged, and habitually to indulge their criminal desires as
opportunity might offer, and making, in some respects, the
act of each the act of both. Hence, such evidence shows a
much greater probability of the commission of the offense
charged, by showing her habitual willingness to yield to his
embraces; thus removing a chief obstacle to such intercourse,
and furnishing a better opportunity, greater temptation or
motive, and superior facilities for the indulgence of his pas-
sion in accordance with such common design.

Previous familiarities, not amounting to actual intercourse,
but tending in that direction, must have a strong bearing
in all cases of this kind; and we can discover no just principle
on which they could have been excluded, without setting at
defiance the common sense of mankind. Such evidence was
given in this case by the father and mother of the girl,
without objection from the defendant; and if such familiari-
ties may be shown *because they tend* to prove actual inter-

course, or to corroborate other evidence of such intercourse, upon what principle can previous *actual intercourse* be rejected, when offered for the same purpose? It is the principal and most important act of familiarity, to which the others only tended. If offered as proof of substantive offenses on which a conviction might be had in the case, it should, of course, be excluded; but as it was not offered for this purpose, and could not be allowed to have such effect, we can see no objection to its reception.

It may be said that the reasons above given do not apply with much force to the testimony of Delia E. Ashcroft herself as to these previous acts—she having already testified directly to an act of intercourse at the Howard House, which must be taken to be the offense charged. It is true the considerations already stated do not apply to her testimony with the same force as to that of other witnesses; but we think they fully justify the propriety of the admission of Mary Ann Ford's testimony, and of all the other witnesses who testified to acts of familiarity tending to show sexual intercourse; and that there is no ground upon which an accomplice can be excluded from testifying to any facts to which any other witness may testify. The credibility of the witness is a question for the jury. But we think there are other reasons which clearly prove the propriety and admissibility of Miss Ashcroft's testimony as to the previous acts of familiarity and sexual intercourse, and which apply with at least equal force to her testimony in reference to such facts as to that of any other witness who might have testified to the same facts.

In any case where a witness has testified to a fact or transaction which, standing alone and entirely unconnected with anything which led to or brought it about, would appear in any degree unnatural or improbable in itself, without reference to the facts preceding and inducing the principal transaction, and which, if proved, would render it more natural and probable; *such* previous facts are not only admis-

sible and relevant, but they constitute a necessary part of such principal transaction—a link in the chain of testimony, without which it would be impossible for the jury, properly, to appreciate the testimony in reference to such principal transaction. And such previous facts should therefore be elicited by the examination of the party producing the witness. Any other rule, in such a case, would be grossly unfair towards the witness; render a trial a process for suppressing, rather than eliciting, the truth, and defeat the very objects for which courts of justice are instituted.

In the order of nature, facts do not occur single and independent—isolated from all others—but each is connected with some antecedent fact, or combination of facts, from which the fact in question follows as an effect from a cause. Torn from this necessary connection, and exhibited alone, many real occurrences would appear under the guise of falsehood, and truth itself would be made to lie.

To permit the evidence, therefore, of an isolated transaction, which could only be made to appear probable by exhibiting the antecedent facts which induced it, and yet to exclude from the investigation all such antecedent facts, would be to set at defiance the order of nature, and the laws of truth which God has stamped upon the human mind.

These considerations are peculiarly applicable to the present case. The act of sexual intercourse at the Howard House, testified to by Miss Ashcroft, and the whole transaction on that particular occasion, standing alone as an isolated transaction, without any of the previous facts which led to it, and which, in the natural order of things, usually precede such a transaction, would strike many minds as wholly unnatural and improbable in itself, and all minds as much less natural or probable than if the previous facts which led to the transaction had been stated. Standing alone, this single transaction would appear as the first act of sexual intercourse, or even of familiarity, between the parties; and, in fact, the first to which she had ever yielded; and, as such, to many minds,

its recital would constitute its own refutation. Most men would say, It is not thus instantaneously that female modesty is overcome, but by more gradual approaches; by a long-continued and more artful excitement of the passions; especially in a case like this, where the man was her own uncle, and the relationship would naturally excite horror and disgust at the idea of such intercourse, until the mind had become familiarized with such ideas, and reason habitually yielded to the control of passion. The boldness, and want of care to avoid detection, exhibited by both parties, might seem unnatural unless it were shown that habit had already rendered such intercourse a matter of course between them. In such a case, therefore, we think all the previous familiarities and intercourse between the parties, from the first approaches of seduction, if such there were, down to the transaction in question, were relevant and proper evidence, tending to throw light upon the transaction itself, explaining and rendering more natural and probable that which, without such explanation, might appear unnatural and improbable. Without this evidence, the jury could not properly appreciate her evidence in relation to the particular transaction in question, nor render a verdict not based upon a partial, and, to some extent, a false, estimate of the evidence. We think, therefore, this evidence was properly admitted. It tended to explain what might otherwise have appeared improbable or unnatural, in the transaction at the Howard House, and to this extent is to be considered a part of the testimony in reference to that transaction, and tending to the proof of the issue; and in this sense to corroborate the testimony of the witness herself.

We do not think the evidence in reference to such previous acts can be said to operate unfairly upon the defendant in such case; as he is not exposed to the risk of a conviction upon them, and every such previous fact stated by the witness, opens a wider field, and gives more ample facilities for contradiction if the testimony be false. If the evidence were confined to a single transaction, a designing witness might

more easily contrive a fictitious case, which should appear consistent with surrounding circumstances, and which, therefore, might be difficult of contradiction. But by admitting evidence of such previous transactions, the difficulties in the way of such fabrication are increased, as every additional transaction testified to multiplies the chances of detection and contradiction if the transactions be not real.

The next exception relied upon is, that the Court, after the evidence was closed, allowed the Prosecuting Attorney "to contend before the jury that if they were not satisfied from the testimony that the alleged act at the Howard House was proven, it was competent for them to find the defendant guilty of any other act which they should be satisfied from the testimony had been committed between said defendant and said witness at any other place within the city of Detroit, and at any time in said city within six years before the filing of the information."

However erroneous this view of the law might be (and it was clearly so), yet, as it was a question of law for the Court, and not for the jury, we do not think it could be treated as an error for which a verdict should be set aside, if the Court, in his charge to the jury, should correct the error, and truly state the law upon the point. It is to the charge, and not to the argument, we are to look for the decision of such a question.

This brings us to the exceptions taken to the several refusals of the Court to charge as requested, and to the charge as given.

The first request was properly refused, for the reasons already given.

To avoid prolixity, we shall consider the second and third requests together, and, with these, the second and third points in the charge applicable to these requests. To comprehend fully the questions arising upon these requests, we must go back to the charge in the information, and the position of the case when these questions arose.

The charge in the information was for a single act of incestuous intercourse, committed at the city of Detroit, on the 24th of February, 1858; but the time stated was not material, and, under the well settled rule in criminal cases, the prosecution, *before the evidence was introduced*, might have selected any one act of such criminal intercourse which occurred within the jurisdiction of the Court, and within the period of the statute of limitations applicable to the offense. It was not a case in which the Court could compel the prosecutor to elect, because the charge, on the face of the information, was confined to a single act.

It was not claimed by the prosecution, and could not legally be claimed, that it was competent to convict the defendant of more than one act under this information. But the prosecutor having the right to select among all the acts of the kind which he could prove to have been committed between the parties, within the period alluded to, and within the jurisdiction, any one of those acts, before evidence had been introduced, was as properly the *act charged* in the information, as any other. In other words, until evidence of some such act had been given, the charge in the information was floating and contingent, aimed as much at one as another, and at no one act in particular; and it remained for the evidence to point the charge to the particular act intended. But when evidence had been introduced tending directly to the proof of one act, and for the purpose of procuring a conviction upon it, from that moment that particular act became the "*act charged.*" What had, till then, been floating and contingent, had now become certain and fixed. The prosecutor had made his election, and could not elect again; nor could he be allowed to prove any other act of the kind as a *substantive offense* upon which a conviction might be had in the cause. The information could be used as a drag-net *only* till the first act had been entangled in its meshes; every other act must be allowed to escape this throw of the net; and thenceforward the evidence must be aimed at *this*

act. If others of the same kind lie in the same range, they can only be noticed for a secondary purpose, as they may be connected with or bear upon *this*.

The act at the Howard House being the first to which evidence was introduced, and the evidence bearing directly upon that act, became from that moment the only offense charged — the only offense the jury were to try, and to which their verdict of guilty or not guilty must relate. Such must have been the view taken by the Recorder when the evidence of previous acts of intercourse was admitted; as he admitted evidence of such acts "not as substantive offenses, but in explanation and corroboration of the evidence of the act charged in the information."

But after the evidence had been admitted for *this* purpose, the Prosecuting Attorney changed his ground, and claimed that the jury might select any one of the acts on which evidence had been given, as the ground of their verdict. And the Recorder seems to have yielded to this change of purpose. It is true, in the second paragraph of his charge on this subject, he tells the jury that "the evidence of other acts of criminal connection is admissible only to corroborate" (he should also have said to explain) "the testimony as to the offense charged." But what was the "offense charged"? He does not tell the jury, nor can it be learned from his entire charge, which, among all the acts in Detroit of which testimony had been given, was, in his own view, the "offense charged." The prosecution claimed that any act of intercourse proved was the offense charged. The Court gives them no information on the subject. It was a question of law, important for the government of the jury. He leaves it to them to ascertain. Will the jury be likely to find it out if the Court can not?

But the third paragraph of the charge clearly adopts the theory of the Prosecuting Attorney, and holds that any one of the several acts of sexual intercourse proved, or attempted to be proved, may be selected by the jury as the "offense

charged," and that they may find the defendant guilty of the one thus selected; as he tells them, "they may find him guilty if, from the evidence, they believe that the act was not committed at the Howard House, but was committed at some other place in the city of Detroit, within the period of six years prior to the time of filing this information." Now, there was no dispute whether that particular act of intercourse, stated to have occurred at the Howard House, occurred there or at some other place in the city, nor whether it occurred at a period materially different from that stated by the witness; and neither the jury nor this Court could possibly derive any other understanding from this charge, than that the jury were at liberty to select among the numerous acts of intercourse in the city of Detroit of which evidence had been given, and to find the defendant guilty of the act so selected.

This was subjecting the defendant to the risk of conviction upon a great number of acts, occurring at different times and places, against which he could not be expected to be prepared to defend; and yet an acquittal or conviction would be no bar to a future prosecution of any, except that at the Howard House. The jury can not be thus sent fishing for the charge which they are to try.

Under such a charge, as was appropriately said by the defendant's counsel, the Recorder might, in his own mind, assign the information to one act, the Prosecuting Attorney to another, the defendant's counsel to a third, and the jury to a fourth; and it was even possible that part of the jury might base their verdict upon one act and part upon another, and a verdict of guilty might result without an actual agreement of the jury. At all events, under such a charge it would always be legally impossible to know of what particular charge the defendant had been actually found guilty. The Court should have charged the jury on this subject as requested by the defendant's counsel in his third request. The law applicable to this point could not be more logically

and accurately stated than in the language of this third request.

The second, as regards this question, is the same in substance, but it does not, like the third, contain within itself the demonstration of its correctness.

The fourth request was that the Court should advise the jury that they ought not to convict the defendant upon the evidence of the complaining witness, Delia E. Ashcroft, unless she is corroborated in some matter material to the issue. All the evidence in the case (and there was a great amount of it) besides that of Miss Ashcroft, which went to show previous familiarities between her and the defendant, tended to corroborate her testimony touching matters material to the issue, as we have already shown. But had it been otherwise, we do not think it would be error for the Court to refuse so to · advise the jury. We think the credibility of an accomplice, like that of any other witness, is exclusively ·a question for the jury; and it is well settled that a jury may convict on such testimony alone without confirmation. There is no good sense in always applying the same considerations in every case to every witness who may stand in the relation of *particeps criminis*. We think it is the duty of a judge to comment upon the nature of such testimony, as the circumstances of the case may require; to point out the various grounds of suspicion which may attach to it; to call their attention to the various temptations under which such witness may be placed, and the motives by which he may be actuated; and any other circumstances which go to discredit or confirm the witness, all of which must vary with the nature and circumstances of each particular case. But here we think the duty of the Court upon this subject ends. All this was done, and well done, by the Recorder in the present case. If any thing more than this is meant by "advising the jury" in such cases, then (though we are aware of some high authorities to the contrary) we are compelled to dissent from the correctness of such "advice." On

principle, and without confounding the respective duties of the Court and the jury, we think the Court have no more right directly to advise a jury to give a verdict of guilty or not guilty, than the jury have to advise the judge how to decide upon a matter of law. We think the charge in relation to this question was in 'all respects fair and just. But for the error in submitting several acts to the jury for their verdict, as we have already explained, the verdict must be set aside, and a new trial granted.

\*· MANNING J. concurred. MARTIN Ch. J. and CAMPBELL J. concurred in all respects, except that they reserved the expression of any opinion whether the religious views of a' witness may not be subject to proof by other witnesses, upon the ground of credibility.

*New trial directed.*