## MARKS FURS, INC., v. CITY OF DETROIT.

1. APPEAL AND ERROR—QUESTIONS REVIEWABLE—SUNDAY CLOSING ORDINANCE—PARTIAL INVALIDITY.

   The sole question before the Supreme Court on plaintiff's appeal from decree dismissing bill to enjoin enforcement of Sunday closing ordinance of fur business, where trial court invalidated portion requiring those who closed on Saturday but opened on Sunday to post certain signs and city did not cross-appeal therefrom, is to ascertain whether balance of ordinance is valid (Detroit Ordinance No 222–F).

2. SUNDAY—MUNICIPAL CORPORATIONS—ORDINANCE—STATUTES.

   Home-rule city ordinance, providing that places of business for selling furs shall be closed on Sunday but that it should not apply to works of necessity or charity or to persons who conscientiously believe Saturday should be observed as the Sabbath and actually refrain from such secular business on Saturday, *held*, to meet State statute protecting citizens who refrain from working on Saturday because of religious beliefs by allowing them to work on Sunday (CL 1948, § 435.7; Detroit Ordinance No 222–F).

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 3 Am Jur, Appeal and Error §§ 821, 866.
[2, 3] 50 Am Jur, Sundays and Holidays §§ 6–8, 10.
[4] 14 Am Jur, Costs § 91.

3. SAME—MUNICIPAL CORPORATIONS—EQUAL PROTECTION—FREE EX-
    ERCISE OF RELIGION.
        Home-rule city ordinance requiring that person engaged in the
        business of selling furs close his place of business on Sunday
        unless he closed on Saturday because of his conscientious
        belief affects equally all within the class and does not interfere
        with free exercise of religion (US Const, Ams 1, 14; Mich
        Const 1908, art 2, §§ 1, 3; Detroit Ordinance No 222–F).

4. COSTS—PUBLIC QUESTION—SUNDAY.
        No costs are allowed in suit to enjoin enforcement of Sunday
        closing ordinance, a public question being involved (Detroit
        Ordinance No 222–F).

EDWARDS and SOURIS, JJ., dissenting.

Appeal from Wayne; Targonski (Victor), J. Sub-
mitted June 9, 1961. (Docket No. 42, Calendar No.
48,554.) Decided December 1, 1961. Rehearing
denied March 15, 1962.

Bill by Marks Furs, Inc., a Michigan corporation,
and Abe Abeloff against the City of Detroit and its
police commissioner to declare void as unconstitu-
tional a Sunday closing ordinance, and to enjoin en-
forcement thereof. Decree adjudging ordinance val-
id except as to certain provisions. Plaintiffs appeal.
Affirmed.

*Weiswasser, Jaffee & Grant* (*Aaron Weiswasser,*
of counsel), for plaintiffs.

*Nathaniel H. Goldstick,* Corporation Counsel, and
*Robert D. McClear,* Assistant Corporation Counsel,
for defendants.

KELLY, J. Appellants present the following ques-
tion in this appeal:

"Is city of Detroit ordinance No. 222–F invalid
and void in its entirety because it contravenes the
provisions of the Michigan and Federal Constitu-
tions and conflicts with State law?"

The ordinance in question provides as follows:

"Sec. 1.  It shall be unlawful for any person, firm, or corporation, or anyone acting in behalf of any person, firm, or corporation, whether owner, proprietor, agent, or employee in the city of Detroit to conduct or engage in the business of selling furs, fur pieces, or fur products manufactured partially or wholly of furs, or to keep open any store, office, or other place for the purpose of selling, renting, leasing, or exchanging thereof on the first day of the week, commonly called Sunday; Provided, that the foregoing provisions shall not apply to works of necessity and charity; and Provided, further, that the provisions herein contained shall not be applicable to any persons who conscientiously believe that the seventh day of the week should be observed as the Sabbath and actually refrain from such secular business and/or labor on that day; Provided, further, that such conscientious believer shall post at least 2 adequate signs in conspicuous places in each place of business that he is closed on Saturday, such signs and the placing thereof to be approved by the police commissioner or his duly authorized representative; and that such conscientious believer shall include in all of his advertisements and publicity, whether by printed matter, radio, television, or otherwise, a notice to the effect that he is closed on Saturday; and Provided, further, that such conscientious believer is not interested, directly or indirectly, in any similar business that is open on Saturday.

"Sec. 2.  Any person, firm, or corporation, or anyone acting in behalf of any person, firm, or corporation violating any of the provisions of this ordinance shall upon conviction thereof be subject to a fine of not more than $500 or to imprisonment in the Detroit house of correction for a period of not more than 90 days, or both such fine and imprisonment in the discretion of the court.

"Sec. 3.  Should any provision, sentence, clause or phrase of this ordinance be held to be invalid for any

reason, such holding shall not affect the validity of the ordinance as a whole or any part thereof other than the part so declared invalid, it being the legislative intent that this ordinance shall stand notwithstanding such holding.

"Sec. 4.   All ordinances or parts of ordinances in conflict herewith are hereby repealed."

Plaintiff Abeloff, as president of Marks Furs, Inc., was the only witness who testified that plaintiff stayed open on Sunday because 30% of the business came in on that day; that the employees only worked 6 days, and were paid a bonus if they worked on Sunday; and that no employee had objected to such an arrangement and no employee was compelled to work on Sunday over his objection.

After argument the trial court gave an opinion to the effect that those parts of the ordinance requiring persons who conscientiously believe that the Sabbath shall be observed on Saturday shall post signs in their places of business, and have the same approved by the police commissioner or his representatives, and include in their advertisement and publicity that they were closed on Saturday, were invalid, but approving and validating the remainder of said ordinance.   The decree, entered pursuant to said opinion, was to such effect.

The city does not cross appeal from the trial court's decision that part of the ordinance held invalid, so the question before this Court is whether the remaining portion of the ordinance contravenes the provisions of the Michigan and Federal Constitutions and conflicts with State laws.

Appellants attack the ordinance, claiming it is arbitrary, unreasonable, and discriminatory and injects a religious test in violation of the First and Fourteenth Amendments of the Federal Constitution and the Constitution and laws of this State, and cite de-

cisions of this Court which appellants claim sustain their contentions.[1]

Plaintiffs justify their operation of business on Sunday because it is their most profitable business day, but nowhere do plaintiffs claim that their store is closed on Saturday.

The Michigan legislature has protected Michigan's citizens who refrain from working on Saturday because of religious beliefs by allowing them to work on Sunday (CL 1948, § 435.7 [Stat Ann 1957 Rev § 18.855]). The majority of the States have Sunday closing laws, but 10 of them require that a person claiming exception "conscientiously" believe in the sanctity of another day or "conscientiously" observe another day as the Sabbath.[2]

The ordinance meets the Michigan statute by providing "that the provisions herein contained shall not be applicable to any persons who conscientiously believe that the seventh day of the week should be observed as the Sabbath and actually refrain from such secular business and/or labor on that day."

The question presented here has been repeatedly before this Court. I disagree with appellants that similar ordinances have been held arbitrary, unrea-

[1] *Roman Catholic Archbishop of Detroit* v. *Village of Orchard Lake*, 333 Mich 389; *Carolene Products Co.* v. *Thomson*, 276 Mich 172; *Ritholz* v. *City of Detroit*, 308 Mich 258; *People* v. *Victor*, 287 Mich 506 (124 ALR 316); *People* v. *Bellet*, 99 Mich 151 (22 LRA 696, 41 Am St Rep 589); *People* v. *DeRose*, 230 Mich 180; *People* v. *Krotkiewicz*, 286 Mich 644; *Irishman's Lot, Inc.*, v. *Secretary of State*, 338 Mich 662; *In re Berman*, 344 Mich 598; *Parkes* v. *Judge of Recorder's Court*, 236 Mich 460 (47 ALR 1128); *People* v. *Gibbs*, 186 Mich 127 (Ann Cas 1917 B, 830); *People's Appliance, Inc.*, v. *City of Flint*, 358 Mich 34; *Mulloy* v. *Wayne County Board of Supervisors*, 246 Mich 632; *Kelley* v. *Judge of Recorder's Court of Detroit* 239 Mich 204 (53 ALR 273); *People* v. *Eberle*, 167 Mich 477; *People* v. *Jenness*, 5 Mich 305; *Peoples Wayne County Bank* v. *Wolverine Box Co.*, 250 Mich 273 (69 ALR 1024); *Sullivan* v. *Graham*, 336 Mich 65; *Weadock* v. *Judge of Recorder's Court of Detroit*, 156 Mich 376 (132 Am St Rep 527, 16 Ann Cas 720); *Davis* v. *Scher*, 356 Mich 291.

[2] Connecticut, Indiana, Maine, Massachusetts, Michigan, Nebraska, Ohio, Texas, Virginia, and West Virginia. Wisconsin's statute is similar.

sonable, and discriminatory, and direct attention to our decision in *People's Appliance, Inc.,* v. *City of Flint,* 358 Mich 34, holding an ordinance forbidding Sunday sales of furniture and household appliances proper and justified. Appellants seem to recognize this fact, but ask us to reverse our previous decision, as is evidenced by the following from appellants' brief:

"We are mindful of the past decisions of this Court regarding Sunday ordinances holding, in effect, that they do not constitute class legislation because they purport to cover all within the same class. Mr. Justice Voelker in his dissenting opinion in *People's Appliance, Inc.,* v. *City of Flint,* 358 Mich 34, 48 *ff,* explicitly pointed out that such a concept avoids the plain fact that all persons within the affected class are discriminated against as compared with those not within the perimeter of the ordinance."

The ordinance affects equally all within the class[3] and does not interfere with free exercise of religion,[4] but merely states that an operator in the fur business must close on Sunday unless he comes within the proviso that he closed on Saturday because of his conscientious belief.

Appellants' contention that the ordinance injects a religious test violating the First and Fourteenth Amendments of the Federal Constitution is answered by the recent opinions announced May 29, 1961, by Chief Justice Warren, in 2 cases, namely: *McGowan* v. *Maryland,* 366 US 420 (81 S Ct 1101 and 1153, 6 L ed2d 393), and *Two Guys from Harrison-Allentown, Inc.,* v. *McGinley,* 366 US 582 and 459 (81 S Ct 1135 and 1153, 6 L ed2d 551 and 418).

In these 2 opinions, the supreme court decided that the Maryland and Pennsylvania "Lord's Day" or

---

[3] See Const 1908, art 2, § 1.—Reporter.
[4] See Const 1908, art 2, § 3.—Reporter.

"Sabbath breaking" statutes are not unconstitutional as laws respecting establishment of religion, since their present purpose is to set aside a uniform day of rest and recreation; that department store employees and operator complaining about loss of Sunday wages and profits have no standing to challenge such statutes as violations of freedom-of-religion guarantee; that failure of statutes to forbid all Sunday sales does not render them violative of Fourteenth Amendment's equal protection clause in absence of evidence that purpose of exemptions was not to protect public health or enhance recreational atmosphere of the day; and that Maryland statutes' discriminations among counties as to activities permitted does not violate equal protection clause.

Calling attention to the fact that the Fourteenth Amendment of the Constitution permits the State a wide scope of discretion and that the State legislature is presumed to have acted within their constitutional power, the supreme court stated in *McGowan* v. *Maryland, supra* (p 425):

"The standards under which this proposition is to be evaluated have been set forth many times by this court. Although no precise formula has been developed, the court has held that the Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some groups of citizens differently than others. The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it. See *Kotch* v. *Board of River Port Pilot Comm'rs,* 330 US 552 (67 S Ct 910, 91 L ed 1093); *Metropolitan Casualty Ins. Co.* v. *Brownell,* 294 US 580 (55 S Ct 538, 79

L ed 1070); *Lindsley* v. *Natural Carbonic Gas Co.,* 220 US 61 (31 S Ct 337, 55 L ed 369, Ann Cas 1912C, 160); *Atchison, T. & S. F. R. Co.* v. *Matthews,* 174 US 96 (19 S Ct 609, 43 L ed 909).''

In considering the claim that Maryland's law conflicted with constitutional provisions for religious liberty, the supreme court stated (pp 429, 436, 444, 445, 450–452):

"The final questions for decision are whether the Maryland Sunday closing laws conflict with the Federal Constitution's provisions for religious liberty. First, appellants contend here that the statutes applicable to Anne Arundel county violate the constitutional guarantee of freedom of religion in that the statutes' effect is to prohibit the free exercise of religion in contravention of the First Amendment, made applicable to the States by the Fourteenth Amendment. But appellants allege only economic injury to themselves; they do not allege any infringement of their own religious freedoms due to Sunday closing.   *   *   *

" 'Laws setting aside Sunday as a day of rest are upheld, not from any right of the government to legislate for the promotion of religious observances, but from its right to protect all persons from the physical and moral debasement which comes from uninterrupted labor. Such laws have always been deemed beneficent and merciful laws, especially to the poor and dependent, to the laborers in our factories and workshops and in the heated rooms of our cities; and their validity has been sustained by the highest courts of the States.'   *   *   *

"In light of the evolution of our Sunday closing laws through the centuries, and of their more or less recent emphasis upon secular considerations, it is not difficult to discern that as presently written and administered, most of them, at least, are of a secular rather than of a religious character, and that presently they bear no relationship to establishment of

religion as those words are used in the Constitution of the United States.

"Throughout this century and longer, both the Federal and State governments have oriented their activities very largely toward improvement of the health, safety, recreation and general well-being of our citizens. Numerous laws affecting public health, safety factors in industry, laws affecting hours and conditions of labor of women and children, week-end diversion at parks and beaches, and cultural activities of various kinds, now point the way toward the good life for all. Sunday closing laws, like those before us, have become part and parcel of this great governmental concern wholly apart from their original purposes or connotations. The present purpose and effect of most of them is to provide a uniform day of rest for all citizens; the fact that this day is Sunday, a day of particular significance for the dominant Christian sects, does not bar the State from achieving its secular goals. To say that the States cannot prescribe Sunday as a day of rest for these purposes solely because centuries ago such laws had their genesis in religion would give a constitutional interpretation of hostility to the public welfare rather than one of mere separation of church and State.   *   *   *

"It is true that if the State's interest were simply to provide for its citizens a periodic respite from work, a regulation demanding that everyone rest 1 day in 7, leaving the choice of the day to the individual, would suffice.

"However, the State's purpose is not merely to provide a 1-day-in-7 work stoppage. In addition to this, the State seeks to set 1 day apart from all others as a day of rest, repose, recreation and tranquility—a day which all members of the family and community have the opportunity to spend and enjoy together, a day on which there exists relative quiet and disassociation from the everyday intensity of commercial activities, a day on which people may

visit friends and relatives who are not available during working days.

"Obviously, a State is empowered to determine that a rest-1-day-in-7 statute would not accomplish this purpose; that it would not provide for a general cessation of activity, a special atmosphere of tranquility, a day which all members of the family or friends and relatives might spend together. Furthermore, it seems plain that the problems involved in enforcing such a provision would be exceedingly more difficult than those in enforcing a common-day-of-rest provision.

"Moreover, it is common knowledge that the first day of the week has come to have special significance as a rest day in this country. People of all religions and people with no religion regard Sunday as a time for family activity, for visiting friends and relatives, for late sleeping, for passive and active entertainments, for dining out, and the like. 'Vast masses of our people, in fact, literally millions, go out into the countryside on fine Sunday afternoons in the summer.' 308 Parliamentary Debates, Commons 2159. Sunday is a day apart from all others. The cause is irrelevant; the fact exists. It would seem unrealistic for enforcement purposes and perhaps detrimental to the general welfare to require a State to choose a common day of rest other than that which most persons would select of their own accord. For these reasons, we hold that the Maryland statutes are not laws respecting an establishment of religion."

At the same session of the United States supreme court (May 29, 1961), when the opinions previously referred to were announced, 2 additional opinions affecting Sunday closing laws and construing statutes from Massachusetts and Pennsylvania were handed down, namely: *Gallagher* v. *Crown Kosher Super Market of Massachusetts, Inc.*, 366 US 617 and 459 (81 S Ct 1122 and 1153, 6 L ed2d 536 and 418), and *Braunfeld* v. *Brown*, 366 US 599 and 459 (81 S Ct 1144 and 1153, 6 L ed2d 563 and 418).

These 2 decisions are of significance to the present opinion because they dealt with prohibition without exception of Sunday sales, even though the operator of the business or shop closed his business because of religious beliefs on Saturday. It is evident that this law is much more drastic and stringent than the State law of Michigan and the ordinance under question. The supreme court in these 2 cases held that the application of Massachusetts and Pennsylvania Sunday closing laws to orthodox Jewish retailers is not rendered violative of the Fourteenth Amendment, religious freedom guarantee, by the fact that such retailers are thereby forced either to change their own Sabbath to Sunday or to suffer economic disadvantages resulting from loss of all weekend selling time.

In the *Gallagher* v. *Crown Kosher Super Market Case, supra,* the supreme court held (pp 630, 631):

"The relevant factors having been most carefully considered, we do not find that the present statutes' purpose or effect is religious. Although the 3-judge court found that Massachusetts had no legitimate secular interest in maintaining Sunday closing, we have held differently in *McGowan* v. *Maryland, supra.* And, for the reasons stated in that case, we reject appellees' request to hold these statutes invalid on the ground that the State may accomplish its secular purpose by alternative means that would not even remotely or incidentally aid religion.

"*Secondly,* appellees contend that the application to them of the Sunday closing laws prohibits the free exercise of their religion. Crown alleges that if it is required by law to abstain from business on Sunday, then, because its owners' religion demands closing from sundown Friday to sundown Saturday, Crown will be open only 4-1/2 days a week, thereby suffering extreme economic disadvantage. Crown's Orthodox Jewish customers allege that because their religious beliefs forbid their shopping on the Jewish

Sabbath, the statutes' effect is to deprive them, from Friday afternoon until Monday of each week, of the opportunity to purchase the kosher food sanctioned by their faith. The orthodox rabbis allege that the statutes' effect greatly complicates their task of supervising the condition of kosher meat because the meat delivered on Friday would have to be kept until Monday. Furthermore, appellees contend that, because of all this, the statutes discriminate against their religion.

"These allegations are similar, although not as grave, as those made by appellants in *Braunfeld* v. *Brown, ante,* p 599. Since the decision in that case rejects the contentions presented by these appellees on the merits, we need not decide whether appellees have standing to raise these questions."

In the *Braunfeld* v. *Brown Case, supra,* the court said (pp 607–609):

"As we pointed out in *McGowan* v. *Maryland, supra,* at pp 444, 445, we cannot find a State without power to provide a weekly respite from all labor and, at the same time, to set 1 day of the week apart from the others as a day of rest, repose, recreation and tranquillity—a day when the hectic tempo of everyday existence ceases and a more pleasant atmosphere is created, a day which all members of the family and community have the opportunity to spend and enjoy together, a day on which people may visit friends and relatives who are not available during working days, a day when the weekly laborer may best regenerate himself. This is particularly true in this day and age of increasing State concern with public welfare legislation.

"Also, in *McGowan,* we examined several suggested alternative means by which it was argued that the State might accomplish its secular goals without even remotely or incidentally affecting religious freedom. *Ante,* at pp 450–452. We found there that a State might well find that those alternatives would not accomplish bringing about a gen-

eral day of rest. We need not examine them again here.

"However, appellants advance yet another means at the State's disposal which they would find unobjectionable. They contend that the State should cut an exception from the Sunday labor proscription for those people who, because of religious conviction, observe a day of rest other than Sunday. By such regulation, appellants contend, the economic disadvantages imposed by the present system would be removed and the State's interest in having all people rest 1 day would be satisfied.

"A number of States provide such an exemption, and this may well be the wiser solution to the problem. But our concern is not with the wisdom of legislation but with its constitutional limitation. Thus, reason and experience teach that to permit the exemption might well undermine the State's goal of providing a day that, as best possible, eliminates the atmosphere of commercial noise and activity. Although not dispositive of the issue, enforcement problems would be more difficult since there would be 2 or more days to police rather than 1 and it would be more difficult to observe whether violations were occurring.

"Additional problems might also be presented by a regulation of this sort. To allow only people who rest on a day other than Sunday to keep their businesses open on that day might well provide these people with an economic advantage over their competitors who must remain closed on that day; this might cause the Sunday-observers to complain that their religions are being discriminated against. With this competitive advantage existing, there could well be the temptation for some, in order to keep their businesses open on Sunday, to assert that they have religious convictions which compel them to close their businesses on what had formerly been their least profitable day. This might make necessary a State-conducted inquiry into the sincerity of the individual's religious beliefs, a practice which a State

might believe would itself run afoul of the spirit of constitutionally protected religious guarantees. Finally, in order to keep the disruption of the day at a minimum, exempted employers would probably have to hire employees who themselves qualified for the exemption because of their own religious beliefs, a practice which a State might feel to be opposed to its general policy prohibiting religious discrimination in hiring. For all of these reasons, we cannot say that the Pennsylvania statute before us is invalid, either on its face or as applied."

The writer concludes this opinion by stating that he finds no merit in appellants' contention that the ordinance is invalid because it fails to set up a clear definition of elements of the offense charged or that the ordinance conflicts with the State law, the State Constitution, or the Federal Constitution.

Affirmed. No costs, a public question being involved.

DETHMERS, C. J., and CARR, BLACK, and KAVANAGH, JJ., concurred with KELLY, J.

SOURIS, J. (*dissenting*). I believe the decree of the court below should be reversed.

The issue presented in this case is much more narrow than the constitutional issues decided by the United States supreme court in *McGowan* v. *Maryland,* 366 US 420 (81 S Ct 1101 and 1153, 6 L ed2d 393); *Two Guys from Harrison-Allentown, Inc.,* v. *McGinley,* 366 US 582 and 459 (81 S Ct 1135 and 1153, 6 L ed2d 551 and 418); *Gallagher* v. *Crown Kosher Super Market of Massachusetts, Inc.,* 366 US 617 and 459 (81 S Ct 1122 and 1153, 6 L ed2d 536 and 418), and *Braunfeld* v. *Brown,* 366 US 599 and 459 (81 S Ct 1144 and 1153, 6 L ed2d 563 and 418). The issue, properly raised in this case, is whether the ordinance of the City of Detroit, No

222–F, is invalid because it contravenes the provisions of the State's Sunday closing statute, CL 1948, § 435.1 *et seq.* (Stat Ann 1957 Rev § 18.851 *et seq.*). I would reverse on the ground that it does. See Mr. Justice Edwards' dissenting opinion in *People's Appliance, Inc.,* v. *City of Flint,* 358 Mich 34, at pages 72 and 73.

Edwards, J., concurred with Souris, J.

Otis M. Smith, J., took no part in the decision of this case.