PEOPLE v VESNAUGH

Docket No. 63052. Submitted May 16, 1983, at Detroit.—Decided
August 31, 1983. Leave to appeal denied, 418 Mich 966.

Gerard J. Vesnaugh was convicted of second-degree criminal
sexual conduct, Recorder's Court of Detroit, John Patrick
O'Brien, J. Defendant appealed. *Held:*

1. It is not improper to ask prospective jurors on voir dire
whether the fact that the defendant was an attorney and a
former priest would affect their ability to render a verdict
based on the evidence. The court did not err in allowing these
questions.

2. The issue of the nonproduction of res gestae witnesses is
not properly preserved for appeal where the defendant failed to
object to their nonproduction or move for a new trial or
evidentiary hearing.

3. Evidence of a criminal defendant's similar criminal act
may be admitted where (1) there is substantial evidence that
the defendant actually perpetrated the similar act sought to be
introduced, (2) some special quality or circumstance of the act
tends to prove the defendant's identity, or the motive, intent,
absence of mistake or accident, scheme, plan or system in doing
the act, or opportunity, preparation, or knowledge, (3) one or
more of those factors is material to the determination of the
defendant's guilt of the charged offense, and (4) the probative
value of the evidence substantially outweighs the danger of
unfair prejudice. A trial court, in deciding to admit evidence of

References for Points in Headnotes

[1] 47 Am Jur 2d, Jury §§ 195, 200-202.
  Right of counsel in criminal case personally to conduct voir dire
    examination of prospective jurors. 73 ALR2d 1187.
  Racial, religious, economic, social, or political prejudice of proposed
    juror as proper subject of inquiry or ground of challenge on voir
    dire in civil case. 72 ALR2d 905.
[2] 47 Am Jur 2d, Jury § 195.
[3] 5 Am Jur 2d, Appeal and Error § 553 *et seq.*
  29 Am Jur 2d, Evidence §§ 180, 181.
  81 Am Jur 2d, Witnesses § 2.
[4, 5] 29 Am Jur 2d, Evidence §§ 321 *et seq.,* 333.

similar acts in a criminal trial, does not have to make a finding on the record that the probative value of the evidence outweighs its prejudicial effect. The trial court did not err in allowing evidence of similar acts to prove that the defendant had the requisite intent.

Affirmed.

1. JURY — VOIR DIRE — TRIAL.

The purpose of voir dire of prospective jurors is to afford counsel the opportunity to develop a rational basis for exercising both challenges for cause and peremptory challenges, and the scope of voir dire is entrusted to the discretion of the trial judge.

2. JURY — VOIR DIRE — TRIAL.

It is not improper to ask prospective jurors on voir dire whether the fact that the defendant was an attorney and a former priest would affect their ability to render a verdict based on the evidence.

3. CRIMINAL LAW — RES GESTAE WITNESSES — PRESERVING QUESTION.

The issue of the nonproduction of res gestae witnesses is not properly preserved for appeal where the defendant failed to object to their nonproduction or move for a new trial or evidentiary hearing.

4. CRIMINAL LAW — EVIDENCE — SIMILAR ACTS — RULES OF EVIDENCE.

Evidence of a criminal defendant's similar criminal act may be admitted where (1) there is substantial evidence that the defendant actually perpetrated the similar act sought to be introduced, (2) some special quality or circumstance of the act tends to prove the defendant's identity, or the motive, intent, absence of mistake or accident, scheme, plan, or system in doing the act, or opportunity, preparation, or knowledge, (3) one or more of those factors is material to the determination of the defendant's guilt of the charged offense, and (4) the probative value of the evidence substantially outweighs the danger of unfair prejudice (MRE 404[b]).

5. CRIMINAL LAW — EVIDENCE — SIMILAR ACTS.

A trial court, in deciding to admit evidence of similar acts in a criminal trial, does not have to make a finding on the record that the probative value of the evidence outweighs its prejudicial effect.

*Frank J. Kelley,* Attorney General, *Louis J.*

*Caruso,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Deputy Chief, Civil and Appeals, and *Jeffrey Caminsky,* Assistant Prosecuting Attorney, for the people.

*Richard R. Nelson,* for defendant.

Before: T. M. Burns, P.J., and D. F. Walsh and C. W. Simon, Jr.,* JJ.

Per Curiam. Following a jury trial in the Detroit Recorder's Court, defendant was found to be guilty as charged of one count of second-degree criminal sexual conduct (CSC 2), MCL 750.520c(1)(a); MSA 28.788(3)(1)(a) (sexual contact with a person under 13 years of age), and was sentenced to a term of from 5 to 15 years imprisonment. Defendant now appeals as of right.

The complainant was a 12-year-old boy who had met defendant at a public swimming pool in 1980. He stated that defendant came to the pool most days.

The complainant testified that on June 11, 1981, defendant grabbed his genitals on two occasions. The first time defendant did not reach under the complainant's bathing suit, the second time he allegedly did. The complainant also alleged that defendant had grabbed his genitals on eight or nine other occasions.

On cross-examination, the complainant admitted that he had told Officer Karl Wenk only about the first grabbing incident on June 11. The complainant attributed this to nervousness when he was talking to the officer.

While the complainant stated that he had told

---

* Circuit judge, sitting on the Court of Appeals by assignment.

his mother about what happened at the pool on June 11, 1981, he admitted that he had never told his mother about any of the other alleged sexual contacts.

Three other boys testified that defendant had grabbed their genitals while they were at the pool. These incidents did not form the basis of any charge against the defendant but, rather, were introduced as similar-acts evidence.

The defense called no witnesses, and the defendant, against his counsel's advice, delivered his own closing argument. Defendant stated that playing keep-away in the water necessarily involved some body contact. Defendant also referred to the prosecution's obligation in a CSC 2 case to prove that any touching was intentional and for the purpose of sexual gratification.

Defendant first asserts that his conviction must be reversed because the prosecutor was permitted to ask the potential jurors whether the facts that defendant had once been a Catholic priest and was, at the time of trial, a member of the State Bar of Michigan would affect their ability to be imparital. Defense counsel objected to the question concerning his client's former status as a Catholic priest only after one potential juror indicated that she associated Catholic brothers with homosexuality and implied that her views were the same in respect to Catholic priests. Immediately after the prosecutor asked the potential jurors whether defendant's current status as a lawyer would affect their ability to fairly render a verdict, defense counsel replied, "I have a similar objection. I will articulate that at a later time if I may." Taken in context, it appears that defense counsel may well have been indicating that he had a question similar to the one the prosecutor had just posed which

he planned to ask the potential jurors. Although a serious question exists as to whether defendant's objection to the voir dire questions has been properly preserved for appellate review, we nonetheless choose to address this assignment of error on its merits.

The purpose of voir dire of prospective jurors is to afford counsel the opportunity to develop a rational basis for exercising both challenges for cause and peremptory challenges, and the scope of voir dire is entrusted to the discretion of the trial judge. *People v Harrell,* 398 Mich 384, 388; 247 NW2d 829 (1976); *People v Prast (On Rehearing),* 114 Mich App 469, 482; 319 NW2d 627 (1982).

Defendant cites *People v Hall,* 391 Mich 175; 215 NW2d 166 (1974), and *People v Bouchee,* 400 Mich 253; 253 NW2d 626 (1977), as support for his argument that it was improper to ask the jurors whether his status as a former priest would render them unable to fairly consider the evidence produced at trial. Both *Hall* and *Bouchee* reaffirm the Supreme Court's holding in *People v Jenness,* 5 Mich 305, 319 (1858), that it is improper to question *witnesses* about their opinions on religion. Here, however, no effort was made to attack the credibility of defendant based upon his religious beliefs. Rather, the prosecutor was simply desirous of determining whether any of the potential jurors would find it inconceivable that a former priest could have committed the charged offense. Instead of unfairly playing on religious prejudices, the prosecutor was trying to obtain a jury free from religious biases. In point of fact, two jurors were ultimately excused as a consequence of the question concerning defendant's status as a former priest. One potential juror admitted that she associated the priesthood with homosexuality; the

other admitted being deeply religious with great "respect for the ministry", and that it would be difficult for him to render a fair verdict. It would appear, then, that both the defense and prosecution were served by permitting the question concerning defendant's former status as a priest.[1]

Defendant cites no authorities to support his contention that it was improper to allow the jurors to be questioned about his status as an attorney. Moreover, defendant points to nothing in the record which even suggests that any juror was biased against him because he was an attorney. Thus, even if the question had been improper (which it was not), this would not be a basis for reversal. GCR 1963, 529.1.

Defendant next asserts that his conviction must be reversed because the prosecution did not produce various res gestae witnesses at the trial. However, as defendant never objected to the nonproduction of these witnesses or moved for a new trial or evidentiary hearing on this basis, this claim is not properly presented to this Court for review. *People v Willie Pearson,* 404 Mich 698, 722-723; 273 NW2d 856 (1979).

Defendant's final, and most troubling, assignment of error is that the trial court erred in allowing the introduction of similar-acts testimony which, if believed, showed that defendant had grabbed the genitals of others boys in the past. In *People v Golochowicz,* 413 Mich 298, 308-309; 319 NW2d 518 (1982), the Supreme Court explicitly

[1] Defendant also argues that his status as a former priest was irrelevant and that he would not have been allowed to give testimony about his religious beliefs. However, the fact that defendant could not give testimony about his religious beliefs certainly would not preclude defense counsel from bringing to the jury's attention that his client was at one time a priest. The prosecution had reason to be concerned about how the jury might react after learning this fact alone, wholly apart from defendant's professed religious beliefs.

adopted the criteria propounded by this Court in *People v Wilkins,* 82 Mich App 260; 266 NW2d 781 (1978), *rev'd on other grounds* 408 Mich 69; 288 NW2d 583 (1980), for resolving issues concerning the admissibility of similar-acts evidence under MRE 404(b). These criteria are: (1) substantial evidence that defendant actually perpetrated the other act; (2) some special quality of the bad act tending to show one of the enumerated items specified in MRE 404(b); (3) the materiality of an item appearing in MRE 404(b) to defendant's guilt of the charged offense; and (4) a determination that the probative value of this evidence substantially outweighs the danger of unfair prejudice. 413 Mich 309. Defendant asserts that the similar-acts evidence offered in this case was not material to any genuinely controverted issue in the case and that the unfair prejudicial effects of this evidence vastly outweighed its probative value.

The trial court instructed the jury that it was only to consider the similar-acts evidence to aid it in determining whether defendant had acted "purposely" in touching the complainant, "that is, his acts were the result of a characteristic scheme or plan or system".

On appeal the prosecution argues that the similar-acts evidence was admissible to show that defendant had intentionally touched the complainant for the purpose of sexual gratification—an element which must be proved to obtain a conviction under MCL 750.520a(g); MSA 28.788(1)(g). The prosecution has apparently abandoned the other basis upon which it argued for admissibility below, namely, to show "evidence probative of a design, scheme or plan". This decision is well founded.[2]

---

[2] In *People v Oliphant,* 399 Mich 472; 250 NW2d 443 (1976), the Supreme Court made it clear that testimony concerning these other acts is not necessarily admissible to show scheme, plan, or system

In may respects, the scenario we are presented with is similar to the one posed in *People v Major,* 407 Mich 394; 285 NW2d 660 (1979), in which the Supreme Court reversed defendant's conviction, finding that similar-acts evidence had been improperly admitted at trial. In *Major,* defendant was charged with CSC 2; he had allegedly lifted the 11-year-old complainant's shirt and kissed her breast. Defendant denied that this act had occurred. The prosecution was permitted to introduce the testimony of two girls that defendant had exposed himself to each of them on a prior occasion. In addition, defendant had allegedly touched the chest of one of these girls. The Court of Appeals upheld defendant's conviction, justifying admission of the similar-acts evidence "to show motive and intent".

In *Major,* the Supreme Court reversed, holding that defendant's intent and motive were not genuinely in issue in that case. The Court specifically noted that defendant had not asserted that the kiss was unintentional or done for some innocent purpose. Moreover, the Supreme Court stated that, had the defendant asserted lack of intent or an innocent purpose in the kiss, the prior sexual acts may have been admissible.

In the instant case, in his opening argument,

simply because the defendant had committed the same act in a similar manner on other occasions. Instead, proof of a scheme, plan, or system must be material to some issue in the case. The existence of a plan or scheme may not be shown through similar-acts evidence where the only tendency of this evidence is to support an inference that if defendant did it once, he probably did it again. In this case, "scheme" or "plan" as such was not material. Although the trial court stated that "scheme or plan or system" was a permissible purpose for which the jury could consider the similar-acts evidence, we need not reverse on this basis. In context, it is clear that the trial court instructed the jury that it could consider the similar-acts evidence only insofar as it tended to show that defendant had intentionally grabbed the complainant's genitals.

defense counsel noted that the prosecution had to prove an intentional touching for the purpose of sexual gratification. Moreover, in his closing argument, defendant personally argued that playing keep-away in the water necessarily involved bodily contact with other participants. The existence of these arguments, unlike the scenario in *Major,* materially raised the question of whether defendant had committed an intentional touching for the purpose of sexual gratification. We further note the inherent improbability that the defendant in *Major* could have had any intention other than sexual gratification in raising the shirt of the 11-year-old complainant there and kissing her breast. In this case, to the contrary, without more, an incidental touching during the course of horseplay in a swimming pool was entirely plausible. Suffice it to say that on the facts of this case the defense had to do very little to raise a genuine question of whether there had been an intentional touching for the purpose of sexual gratification.

Defendant also assigns error to the fact that the trial court never found on the record that the probative value of the similar-acts evidence outweighed its prejudicial effect. The prosecution denies this contention, asserting that defendant has simply failed to provide this Court with the relevant transcript. We need not resolve this dispute because the Supreme Court has never required the trial courts to make this determination on the record, even though at least one panel of this Court has suggested that it should. *People v Nabers,* 103 Mich App 354, 366-367; 303 NW2d 205 (1981), *rev'd in part on other grounds* 411 Mich 1046; 309 NW2d 187 (1981). In our opinion the proffered similar-acts testimony was highly proba-

tive, and we cannot say that the trial court erred in refusing to exclude it as unduly and unfairly prejudicial.

Affirmed.