# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JASON ALLEN NIEMASZ,

        Defendant-Appellant.

UNPUBLISHED
October 16, 2018

No. 337598
Macomb Circuit Court
LC No. 2015-004574-FC

Before: MURRAY, C.J., and BORRELLO and RONAYNE KRAUSE, JJ.

PER CURIAM.

A jury convicted defendant of one count each of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(a), and second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(a) (CSC-II). The trial court sentenced defendant to 25 to 50 years in prison for the CSC-I conviction and 81 months to 15 years in prison for the CSC-II conviction, to be served consecutively. Defendant appeals as of right. We affirm.

The jury convicted defendant of sexually assaulting 12-year-old SM in November 2015, who was a member of a girls' soccer team coached by defendant. Two of defendant's daughters were also on the team. SM testified that one of defendant's daughters invited her to spend the night at defendant's home, and after the girls went to bed, SM woke up around midnight and went to use the bathroom. At that time, defendant called SM into his bedroom, locked the door, and then forced her onto the bed. Despite demands to stop, defendant removed her clothing, touched her breasts with his hand, and then forcibly inserted his penis into her vagina. SM revealed the assault to a friend, a relative, and a neighbor two days later. She was taken to a hospital where she was examined by a sexual assault nurse examiner (SANE), who found a small tear on SM's hymen. Although the nurse conceded that a hymen injury does not necessarily occur solely because of sexual activity, she opined that the injury she observed is uncommon absent sexual activity. The prosecution also presented evidence that, six years earlier, in September 2009, defendant sexually assaulted 13-year-old AM, who was a babysitter at defendant's home.

## I. OTHER-ACTS EVIDENCE

Defendant first argues that the trial court abused its discretion by admitting AM's other-acts testimony pursuant to MCL 768.27a. We review a trial court's decision to admit evidence for an abuse of discretion, *People v Chelmicki*, 305 Mich App 58, 62; 850 NW2d 612 (2014),

which occurs when the trial court chooses an outcome that is outside the range of principled outcomes, *People v Schaw*, 288 Mich App 231, 236; 791 NW2d 743 (2010).

MCL 768.27a provides, in pertinent part:

(1) Notwithstanding section 27, in a criminal case in which the defendant is accused of committing a listed offense against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant. If the prosecuting attorney intends to offer evidence under this section, the prosecuting attorney shall disclose the evidence to the defendant at least 15 days before the scheduled date of trial or at a later time as allowed by the court for good cause shown, including the statements of witnesses or a summary of the substance of any testimony that is expected to be offered. [Citation omitted.]

Under MCL 768.27a(1), when a defendant is charged with a listed offense, evidence that the defendant committed another listed offense against a minor is admissible for its bearing on any matter to which it is relevant, including propensity to commit the offense. See *People v Mann*, 288 Mich App 114, 117-118; 792 NW2d 53 (2010). However, the trial court must still determine whether the risk of unfair prejudice substantially outweighs the probative value of the evidence. MRE 403; *People v Brown*, 294 Mich App 377, 386; 811 NW2d 531 (2011).

Defendant's principal argument is that evidence of the prior assault of AM was unfairly prejudicial because he was never charged or convicted of any offense arising out of her allegations. But the plain language of MCL 768.27a does not preclude prosecutors from introducing evidence of uncharged sexual offenses involving minors, *People v Pattison*, 276 Mich App 613, 618-619; 741 NW2d 558 (2007), as well as offenses that did not result in a conviction, *People v Petri*, 279 Mich App 407, 411; 760 NW2d 882 (2008). As the trial court acknowledged, defense counsel had the opportunity to attack the reliability of AM's testimony through cross-examination to reduce any risk of unfair prejudice.

In addition to the uncharged allegation argument, defendant generally argues that any probative value of AM's testimony was outweighed by its prejudicial effect. MRE 403 provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

"[W]hen applying MRE 403 to evidence admissible under MCL 768.27a, courts must weigh the propensity inference in favor of the evidence's probative value rather than its prejudicial effect. That is, other-acts evidence admissible under MCL 768.27a may not be excluded under MRE 403 as overly prejudicial merely because it allows a jury to draw a propensity inference." *People v Watkins*, 491 Mich 450, 487; 818 NW2d 296 (2012). As explained in *People v Cameron*, 291 Mich App 599, 611; 806 NW2d 371 (2011):

The "unfair prejudice" language of MRE 403 " 'refers to the tendency of the proposed evidence to adversely affect the objecting party's position by injecting

considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock.' " Moreover, admission of "[e]vidence is unfairly prejudicial when . . . [the danger exists] that marginally probative evidence will be given undue or preemptive weight by the jury." [Citations omitted; alterations in original.]

Considerations regarding prejudice include:

(1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony. This list of considerations is meant to be illustrative rather than exhaustive. [*Watkins*, 491 Mich at 487-488.]

Although defendant complains that the trial court failed to balance the factors set forth in *Watkins*, it is not by itself reversible error if a trial court does not state on the record how it balanced the prejudicial effect and probative value, see *People v Vesnaugh*, 128 Mich App 440, 448; 340 NW2d 651 (1983), though it is certainly preferred. Here, the trial court acknowledged the balancing test and distinguished it from the test under MRE 404(b)(1), and then denied the motion without further discussion. Because the trial court is presumed to know the law, *People v Garfield*, 166 Mich App 66, 79; 420 NW2d 124 (1988), we conclude the trial court's decision was sufficient for conducting appellate review.

We disagree with defendant's argument that the evidence was unfairly prejudicial because the prior act and the instant case were only "superficially similar." Other acts are not required to be identical, *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011), and the acts here shared similarities. SM and the prior victim, AM, were close in age at the time they were abused. Defendant was not related to either girl, but he had coached SM for several seasons and she was comfortable visiting his home. Similarly, defendant was a close friend of AM's family, she babysat for his children, and she considered him an uncle. The similarities in the girls' ages and the close relationship between defendant and both young girls enhanced the probative value of AM's testimony.

Nor was the evidence of his prior assault of AM unfairly prejudicial in light of the time (six years) between the two assaults. There are several reasons for this conclusion. First, AM did not reveal all of the details of the assault for about five years. Second, a forensic interviewer testified that disclosure is a process and it sometimes can take a long time to reveal trauma. AM testified that she ultimately disclosed the prior sexual assault because she became concerned for defendant's daughters, who would be close to the age she was when defendant assaulted her. Third, the similarity in the ages of AM and SM when defendant sexually assaulted them enhances the probative value of the evidence. Fourth, nothing in the record suggests that defendant changed over the course of the six years between the two incidents. Although he promised his ex-wife and daughter that he would get help after they discovered what had occurred with AM, there is no evidence that he did. Rather, he told the detective that he enrolled

in classes for sex addiction only after the allegations were made by SM. The time between the incidents did not present a risk of unfair prejudice.

Although defendant claims that the prior act involving AM was isolated and did not involve a long period of grooming, the record demonstrates otherwise, as it reveals a long period of grooming through relationship-building. Defendant and AM would spend time watching sports together and she even had a favorite pair of pants that she would borrow when she was at his house. Defendant similarly built a relationship with SM through coaching, facilitating her friendship with his middle daughter, and other favorable treatment, such as giving her an energy drink that her mother would not allow. In light of the lengthy grooming of each victim, any argument regarding the isolated nature of the assault of AM fails.

Finally, defendant argues that there was no need for the other-acts evidence because SM had an opportunity to testify and "[o]ther witnesses arguably gave testimony to support her allegations." However, defense counsel created a credibility contest between SM and defendant. Although evidence that defendant's DNA was recovered from SM's breasts tended to support her allegations, defendant relied on the concept of secondary transfer to suggest that an unidentified contributor was the perpetrator. Additionally, a forensic scientist testified that secondary transfer is not commonplace. We are not persuaded that there was no need for evidence beyond SM's testimony.

In sum, the trial court acknowledged that any evidence offered against defendant would be prejudicial. But "the prosecution does not have to use the least prejudicial evidence to make out its case." *Cameron*, 291 Mich App at 611. The prior act did not "stir such passion" that the jury was unable to consider the merits of the case. *Id.* at 611-612. Any prejudicial effect of the evidence of defendant's prior bad act did not substantially outweigh the probative value of the evidence. Rather, the evidence provided a more complete picture of defendant's history, shed light on his tendency to commit a sexual assault against a preteen child, and was particularly relevant to defendant's claims that he was falsely accused and the real perpetrator was unidentified. The jury was also presumed to follow the trial court's instructions for considering this evidence, namely that it could not convict defendant solely because he may be guilty of other bad conduct. *People v Rodgers*, 248 Mich App 702, 717; 645 NW2d 294 (2001). Therefore, the trial court did not abuse its discretion when it admitted the other-acts evidence under MCL 768.27a.

## II. CONSECUTIVE SENTENCING

When consecutive sentencing is authorized, but not mandatory, this Court reviews a trial court's decision to impose consecutive sentences for an abuse of discretion. *People v Norfleet*, 317 Mich App 649, 654; 897 NW2d 195 (2016). " 'An abuse of discretion occurs . . . when the trial court chooses an outcome falling outside th[e] principled range of outcomes.' " *Id.* at 664, quoting *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003). "[T]rial courts imposing one or more discretionary consecutive sentences are required to articulate on the record the reasons for each consecutive sentence imposed." *Id.* at 654.

"In Michigan, concurrent sentencing is the norm, and a consecutive sentence may be imposed only if specifically authorized by statute." *People v Ryan*, 295 Mich App 388, 401; 819

NW2d 55 (2012) (quotation marks and citation omitted). However, pursuant to MCL 750.520b(3), when a defendant is convicted of first-degree criminal sexual conduct, the "court may order a term of imprisonment . . . to be served consecutively to any term of imprisonment imposed for any other criminal offense arising from the same transaction." MCL 750.520b(3). The purpose of consecutive-sentencing statutes is to deter persons from committing multiple crimes by removing the security of concurrent sentencing. *Ryan*, 295 Mich App at 408.

There is no dispute that defendant's CSC convictions arose from the same transaction. Defendant argues only that the trial court's decision to impose consecutive sentences is beyond the range of principled outcomes. Defendant is incorrect. The court gave multiple reasons for its decision. The trial court reasoned that, in addition to SM (who was suicidal and overdosed after the assault), "there were many other victims associated with [defendant's] actions." The court noted that defendant's children also "suffered a great deal of trauma." Defendant's middle daughter had observed the assault, and his oldest daughter felt guilty about leaving SM with defendant when she knew about his history with AM. Defendant's ex-wife reported that their daughters "will be traumatized for the rest of our lives," and claimed that defendant had "brought extreme grief and pain to all of us. He has destroyed our lives . . . We live in fear of him and others like him." Although AM testified that she had put defendant's assault behind her, she later filed a police report and testified about the assault to protect defendant's children from similar behavior. The trial court observed that being "required to come in and testify" was "[d]evastating" to AM. The court also noted that the witnesses relived the experience in court repeatedly because of defendant's first mistrial and subsequent retrial. The trial court opined that defendant's victims would carry the experience for the rest of their lives.

We conclude that the trial court sufficiently articulated its reasons for imposing consecutive sentences, and that its decision is within the range of principled outcomes. Accordingly, the court did not abuse its discretion.

### III. DEFENDANT'S STANDARD 4 BRIEF

Finally, in a pro se supplemental brief, filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4, defendant argues that the trial court erred by admitting the testimony of the SANE nurse. Because defendant did not object to this testimony at trial, this issue is unpreserved and is reviewed for plain error affecting defendant's substantial rights. *People v Benton*, 294 Mich App 191, 202; 817 NW2d 599 (2011).

MRE 702 governs the admission of expert testimony. *People v Yost*, 278 Mich App 341, 393; 749 NW2d 753 (2008). MRE 702 provides:

> If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

"Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier or fact." MRE 704. However, such testimony must be helpful. *People v Smith*, 425 Mich 98, 107; 387 NW2d 814 (1986).

Our Supreme Court addressed expert testimony in child sexual abuse cases in *People v Beckley*, 434 Mich 691; 456 NW2d 391 (1990), and *People v Peterson*, 450 Mich 349; 537 NW2d 857 (1995), amended 450 Mich 1212 (1995). In child sexual abuse cases: "(1) an expert may not testify that the sexual abuse occurred, (2) an expert may not vouch for the veracity of a victim, and (3) an expert may not testify whether the defendant is guilty." *Peterson*, 450 Mich at 352. However:

> (1) an expert may testify in the prosecution's case in chief regarding typical and relevant symptoms of child sexual abuse for the sole purpose of explaining a victim's specific behavior that might be incorrectly construed by the jury as inconsistent with that of an actual abuse victim, and (2) an expert may testify with regard to the consistencies between the behavior of the particular victim and other victims of child sexual abuse to rebut an attack on the victim's credibility. [*Id*. at 352-353.]

Expert testimony can assist the jury in understanding behavior of a sexual abuse victim that may seem inconsistent with the jury's preconceptions. *Id*. at 362.

Citing *United States v Whitted*, 11 F3d 782, 785-786 (CA 8, 1993), defendant argues that admission of the SANE nurse's testimony was plainly erroneous because it is improper for an expert to opine that a witness is telling the truth. See also *Peterson*, 450 Mich at 352. Defendant challenges the following testimony about a tear on SM's hymen:

> *Prosecutor*: [I]n your experience, would you expect to see that kind of tear on a 12-year-old vagina?
>
> [*The witness*]: No.
>
> *Prosecutor*: Why not?
>
> [*The witness*]: Because she had told me she's never had sex before, so there would be no reason to have a tear on her hymen.
>
> * * *
>
> *Prosecutor*: Is it common that a 12-year-old would have a torn hymen if they're not having sex?
>
> [*The witness*]: No. If they're not having sex, it should not be torn.

As this testimony reveals, the SANE nurse did not express an opinion whether SM was telling the truth. Rather, she opined that, absent sexual intercourse, the type of tear she observed is not common or expected. Because the SANE nurse did not vouch for SM's credibility, admission of her testimony did not constitute plain error.

-6-

Defendant also appears to disagree with the SANE nurse's opinion, arguing that "scientific proof" establishes that a tear could have occurred from other sources. A party's disagreement with an expert's opinion or interpretation of facts goes to the weight to be given to the testimony, and not its admissibility. *Bouverette v Westinghouse Electric Corp*, 245 Mich App 391, 401; 628 NW2d 86 (2001). Defense counsel cross-examined the witness, who agreed that a hymen injury does not necessarily occur solely because of sex; something else could be inserted into the vagina and cause a tear, such as a finger or foreign object, including a tampon. Thus, although the witness testified that it was not common for a 12-year-old girl's hymen to be torn absent sexual activity, her testimony did not preclude the jury from finding that there were other possible causes for the injury. It was up to the jury to resolve the credibility of the witness's testimony and the weight to be accorded this evidence. *People v McGhee*, 268 Mich App 600, 624; 709 NW2d 595 (2005). Defendant has not established a plain error.

Affirmed.

/s/ Christopher M. Murray
/s/ Stephen L. Borrello
/s/ Amy Ronayne Krause