*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JOHN THOMAS CRAIG,

Defendant-Appellant.

UNPUBLISHED
December 28, 2023

No. 361419
Calhoun Circuit Court
LC No. 2019-003606-FC

Before: BORRELLO, P.J., and SWARTZLE and PATEL, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions for (1) four counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(b) (victim is at least 13 years of age but less than 16 years of age and related by affinity); and (2) three counts of third-degree criminal sexual conduct (CSC-III), MCL 750.520d(1)(d) (incest). The trial court sentenced defendant to serve (1) four concurrent terms of 25 to 60 years and (2) three concurrent terms of 95 to 180 months, respectively. For the reasons set forth in this opinion, we affirm defendant's convictions but vacate defendant's sentence and remand to the trial court for resentencing.

## I. BACKGROUND

This case arises out of defendant's sexual abuse of three of his stepdaughters, BNC, BMC, and SAC, throughout their time living in Calhoun County. All three stepdaughters testified about the abuse that they suffered from defendant while they lived in a house on Capital Avenue and while they lived in a van. The abuse came to light in 2019 after SAC ran away and disclosed the abuse to police.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant first argues that defense counsel was ineffective for not requesting a specific-unanimity jury instruction on Count V. With respect to Count V, the jury was instructed that defendant was charged with CSC-I under MCL 750.520b(1)(b) for engaging in fellatio with BNC, who was at least 13 but less than 16 years of age and related to defendant by affinity. The jury was further instructed that defendant was charged in the alternative on Count V with CSC-III under

-1-

MCL 750.520d(1)(d) for engaging in fellatio with BNC, regardless of her age but who was nonetheless related to defendant by affinity. Additionally, the trial court instructed the jury that it could only convict defendant of one of these crimes for Count V, with the key distinction being whether the victim was within the age range required for a conviction on the CSC-I charge or was instead over 15. The jurors were instructed that their verdict had to be unanimous. The jury found defendant guilty of CSC-III for Count V.

During the trial, BNC testified about acts of fellatio with defendant. She testified that while living at the Capital Avenue house, defendant "would take and have me to do oral where he would have me—take and put my mouth on his—his penis and have me go up and down 'til he ejaculated." According to BNC, these acts (as well as other acts of sexual penetration) would occur "[s]ometimes at least twice a day." BNC further testified that there "was one time we were over by—up here in Michigan . . . and we were cleaning out the van and he wou—had filmed me going up and—up and down on his penis." BNC explained that defendant was her step-father and that the family was living in a van in 2019 when SAC ran away. There was evidence that around the time SAC ran away, the family had been parking the van overnight in various parking lots in Calhoun County. The family had come back to Michigan after living in other states. Previously, the family had lived in a house on Capital Avenue in Battle Creek.

BNC, who was born in May 1997, testified that defendant began sexually abusing her before the family lived in the Capital Avenue house. She could not remember exactly how old she was when they lived in that house, but she thought she was 16 or 18 years old. The prosecution introduced evidence of a lease showing that the family rented the Capital Avenue house from September 2014 to September 2015. There was also some evidence that the family may have started living in that house before September 2014. BNC testified that defendant continued to put his penis in her mouth and have her "like go down—up and down on his penis" while they lived in the van, but he did not continue to commit certain other types of sexually assaultive acts that she testified had occurred when the family lived in the house on Capital Avenue.[1] She explained that defendant sexually assaulted her in the van on occasions when she was alone with him and BNC's mother and siblings were inside a store. BNC thought the family lived in the van for "probably a couple years."

On appeal, defendant argues that it is impossible to know from this evidence whether the jury convicted him on Count V for an incident of fellatio that occurred in the house on Capital Avenue or an incident of fellatio that occurred in the van and that his trial counsel was therefore constitutionally ineffective for failing to request that the jury receive a specific unanimity instruction on Count V in response to the evidence admitted at trial. In making this argument, defendant notes that the information did not specify a location or date for this charge and that the information merely alleged that the offense occurred between January 2008 and January 2019. Defendant also notes that this date range was read to the jurors at the beginning of trial and that

---

[1] BNC testified when the family lived on Capital Avenue, defendant licked her vagina and inserted his penis into her vagina. Defendant was charged with additional counts based on these acts, but those charges are not at issue on appeal.

the prosecutor presented the case to the jury during opening statements as one involving acts of sexual abuse committed over the course of this same 11-year period.

Defendant maintains that because the jury's conviction of CSC-III for Count V did not depend on BNC's age, the conviction could have been based on either of these materially distinguishable acts, thus violating his constitutional right to a unanimous jury verdict. As a result, defendant argues, defendant was prejudiced by his trial counsel's deficient performance in failing to recognize that a specific unanimity instruction was warranted because of the prosecution's evidence of multiple distinct acts of fellatio with BNC that could form the factual basis for Count V under the alternative charges on which the jury was instructed.

"The question whether defense counsel performed ineffectively is a mixed question of law and fact; this Court reviews for clear error the trial court's findings of fact and reviews de novo questions of constitutional law." *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). "A judge first must find the facts, and then must decide whether those facts constitute a violation of the defendant's constitutional right to effective assistance of counsel." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). "Clear error exists if the reviewing court is left with a definite and firm conviction that the trial court made a mistake." *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011).

"Both the Michigan and the United States Constitutions require that a criminal defendant enjoy the assistance of counsel for his or her defense." *Trakhtenberg*, 493 Mich at 51, citing Const 1963, art 1, § 20; US Const, Am VI. To demonstrate that a new trial is warranted based on a claim of ineffective assistance of counsel, a defendant must demonstrate that counsel's performance was below an objective standard of reasonableness and that but for that deficient performance, there is a reasonable probability that the result would have been different. *Strickland v Washington*, 466 US 668, 687-688, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *Armstrong*, 490 Mich at 289-290. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 US at 694. "The proper measure of attorney performance [is] simply reasonableness under prevailing professional norms." *Id*. at 688.

Under the Sixth Amendment, as incorporated against the States, a jury in state or federal court "must be unanimous to convict a defendant of a serious offense."[2] *Edwards v Vannoy*, 593 US ___, ___; 141 S Ct 1547, 1553; 209 L Ed 2d 651 (2021). Similarly, the Michigan Constitution requires that jury verdicts must be unanimous to convict a criminal defendant. *People v Cooks*, 446 Mich 503, 510-511; 521 NW2d 275 (1994), citing Const 1963, art 1, § 14. "In order to protect a defendant's right to a unanimous verdict, it is the duty of the trial court to properly instruct the jury regarding the unanimity requirement." *Id*. at 511.

---

[2] The United States Supreme Court has stated that this rule does not apply to "petty offenses" that "carry a maximum prison term of six months or less." *Edwards v Vannoy*, 593 US ___, ___ n 1; 141 S Ct 1547, 1553 n 1; 209 L Ed 2d 651 (2021). This exception is not at issue in the instant case.

Our Supreme Court held in *Cooks*, 446 Mich at 530, that "when the state offers evidence of multiple acts by a defendant, each of which would satisfy the actus reus element of a single charged offense, the trial court is required to instruct the jury that it must unanimously agree on the same specific act if the acts are materially distinct or if there is reason to believe the jurors may be confused or disagree about the factual basis of the defendant's guilt." The Court further explained that "[w]hen neither of these factors is present, . . . a general instruction to the jury that its verdict must be unanimous does not deprive the defendant of his right to a unanimous verdict." *Id*.

In *Cooks*, the defendant was charged with one count of CSC-I, but the complainant testified at trial about three incidents of sexual penetration. *Id*. at 505. The "information alleged that 'on or about Jan, 1989,' defendant '[d]id engage in sexual penetration, to wit: anal intercourse with the complainant, a person under 13 years of age . . . .' " *Id*. at 506 (alteration in original). The complainant lived in a house with her cousin, and the defendant lived in the basement of the home. *Id*. At trial, the complainant testified and described three similar sexual assaults that occurred on three consecutive days. *Id*. at 506-507. In each instance, the complainant testified that the defendant approached her while she was doing chores around the house, fondled her breasts and vagina, and then forced her against a wall to attempt penetrating her anus with his penis. *Id*. The defendant's trial counsel requested a jury instruction requiring that the jurors " 'must be unanimous as to which specific act of penetration occurred, if any, before . . . find[ing] the Defendant guilty of CSC in the first degree.' " *Id*. at 508. The trial court denied the request and gave a general unanimity instruction stating that a " 'verdict in a criminal case must be unanimous.' " *Id*. at 508-509. The jury convicted the defendant of CSC-II. *Id*. at 509.

Our Supreme Court affirmed the conviction. *Id*. at 505-506. The Court held

> that a specific unanimity instruction is not required in *all* cases in which more than one act is presented as evidence of the actus reus of a single criminal offense. The critical inquiry is whether either party has presented evidence that *materially* distinguishes any of the alleged multiple acts from the others. In other words, where materially identical evidence is presented with respect to each act, and there is no juror confusion, a general unanimity instruction will suffice. [*Id*. at 512-513.]

The Supreme Court concluded that because "materially identical evidence was offered with respect to each of the alleged acts of penetration and there is no reason to believe the jury was confused or disagreed about the basis of defendant's guilt," the trial court had not erred by declining to instruct the jurors that they had to reach a unanimous agreement about a specific act of penetration to convict the defendant. *Id*. at 505-506.

Our Supreme Court explained that after reviewing federal and out-of-state authority, it was persuaded that a specific unanimity instruction was not required when the prosecution presented multiple similar acts as evidence of continuous conduct that constituted a single continuing criminal offense, although that single criminal offense was comprised of a series of repeated and materially indistinguishable acts, if there was also no reason to believe that the jurors might be confused or disagree about the factual basis for the defendant's guilt. *Id*. at 512-513, 517-524. Noting that this rule had been applied in state courts "in the context of multiple incidents of sexual assault" constituting a "single criminal offense," the Court indicated that the rule applied when

there were circumstances such as difficulty in specifying the times of the offenses with precision, a course of conduct consisting of repeated and substantially analogous sexually assaultive acts, and there were not distinct and separate sources of evidence of the various acts that would require the jury to distinguish between the credibility of different witnesses or weight to give different pieces of real evidence. *Id*. at 518 n 19, 519-524.

Applying its holding to the facts of the case in *Cooks*, the Supreme Court explained its decision to affirm the defendant's conviction as follows:

> [T]he evidence offered in this case to support each of the alleged acts of penetration was materially identical, i.e., the complainant's equivocal testimony of an anal penetration, occurring in the same house over an unspecified three-day period in January 1989, while only she and defendant were in the room. Thus, the multiple acts alleged by the prosecutor were tantamount to a continuous course of conduct.
>
> Furthermore, . . . defendant here did not present a separate defense or offer materially distinct evidence of impeachment regarding any particular act. He merely denied the existence of any inappropriate behavior. Thus, the sole task of the jury was to determine the credibility of the victim with respect to the pattern of alleged conduct. Because neither party presented materially distinct proofs regarding any of the alleged acts, the factual basis for the specific unanimity instruction . . . was nonexistent.
>
> . . . the prosecutor here was unable to specify in the information the precise dates of the alleged penetrations, other than "on or about Jan, 1989." Unlike [*People v Jenness*, 5 Mich 305 (1858),] the child victim then testified about identical incidents of anal penetration on three successive days, consistent with the charge in the information. Absent any indication of juror confusion or disagreement over the existence of any of the alternative acts, a specific unanimity instruction is not required on these facts. [*Id*. at 528-529.]

In *Jenness*, the factual circumstances of which the Court found distinguishable from those in *Cooks*, the defendant was charged with one count of incest for allegedly having sexual intercourse with his niece on a particular date in 1858 within the city of Detroit. *Jenness*, 5 Mich at 307. The niece testified that the defendant had sexual intercourse with her at her room in the Howard House in Detroit on January 17, 1858. *Id*. The niece further "testified to numerous acts of sexual intercourse between herself and the prisoner, at various places within and without the said city of Detroit, commencing in 1853, and continuing to the time of the act first sworn to as above stated." *Id*. at 308. The trial court instructed the jury that "though the information alleges that the prisoner had criminal connection with his niece . . . in this city, on the 24th day of February, time and place are immaterial, and the jury may find him guilty, if from the evidence they believe that the act was not committed at the Howard House, but was committed in some other place in the city of Detroit, within the period of six years prior to the time of filing this information." *Id*. at 312. The defendant was found guilty. *Id*. at 317.

On appeal, our Supreme Court vacated the conviction and remanded for a new trial. *Id*. at 332. The Court stated that the "act at the Howard House being the first to which evidence was

introduced, and the evidence bearing directly upon that act, became from that moment the only offense charged--the only offense the jury were to try, and to which their verdict of guilty or not guilty must relate." *Id*. at 328. The Court further noted that the evidence of previous acts of intercourse had been expressly admitted for purposes of explaining and corroborating the evidence of the charged act and not for "substantive" purposes. *Id*. Nonetheless, the Supreme Court concluded that the trial court's instruction had informed the jury it was "at liberty to select among the numerous acts of intercourse in the city of Detroit of which evidence had been given, and to find the defendant guilty of the act so selected." *Id*. at 329. The Court therefore held that the instruction was improper because it was "possible that part of the jury might base their verdict upon one act and part upon another, and a verdict of guilty might result without an actual agreement of the jury," making it "legally impossible to know of what particular charge the defendant had been actually found guilty." *Id*.

In this case, the prosecution presented a general case of sexual abuse that occurred over a period of several years. As to Count V specifically, the offense of sexual penetration of defendant's penis in BNC's mouth was alleged to have generally occurred at some point between January 2008 and January 2019. The prosecution maintained this general focus in opening statement and closing argument, noting that there was testimony of more sexual penetrations than there were criminal charges involving BNC. The prosecution also acknowledged that during that time defendant and his family lived within Calhoun County, both in a house for a period of time and in a van for a period of time. BNC provided specific and detailed testimony that defendant penetrated her mouth with his penis. However, her testimony was somewhat more general relative to when these incidents occurred. It was clear that they occurred multiple times in both the Capital Avenue house and the van. Contrary to defendant's argument on appeal, however, it is not clear from BNC's testimony that the incidents only occurred "years apart" or that acts of fellatio in the van necessarily occurred only during the time that the family was actually living in the van. The evidence simply supports a conclusion that these acts occurred repeatedly over the course of many years, including when the family lived on Capital Avenue and when the family lived in the van.

As in *Cooks*, the "sole task" of the jury in this case was "to determine the credibility of the victim with respect to the pattern of alleged conduct." *Cooks*, 446 Mich at 528. Defendant did not offer a materially different defense to any particular act, and his trial counsel testified at the *Ginther*[3] hearing that defendant's defense to the charge was that the allegations were not true.[4] Like the circumstances in *Cooks*, defendant was charged with ongoing repeated sexual acts with the victim and, with respect to Count V, BNC provided testimony of multiple similar acts where defendant isolated her and had her perform oral sex on him. This case is distinguishable from *Jennes*; unlike the circumstances of that case, defendant's jury was not instructed that it could rely on finding the occurrence of *any* sexual crime within a given time period to justify convicting defendant of one particular and specifically described instance of criminal sexual conduct.

---

[3] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[4] Additionally, based on BNC's testimony, defendant's trial counsel also defended the charge at trial by contesting that that BNC was within the age range of the CSC-I charge.

Because the prosecution presented the evidence of multiple acts of fellatio as evidence of a single continuous criminal offense, and we do not see any reason that the jury would have been confused or disagreed about the factual basis of defendant's guilt, the general unanimity instruction was sufficient and defendant was not entitled to a specific unanimity instruction. *Cooks*, 446 Mich at 519-520, 524, 530. Although defendant's trial counsel cannot be said to have made a strategic decision in declining to request a specific unanimity instruction, given her admission at the *Ginther* hearing that she had never heard of a specific unanimity instruction and thus was not aware of this potential issue at trial, counsel is nonetheless not ineffective for failing to make a meritless argument. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010); see also *People v Gadomski*, 232 Mich App 24, 32; 592 NW2d 75 (1998) ("Because defendant was not entitled to such [a special unanimity] instruction, defense counsel's failure to request the instruction did not constitute ineffective assistance of counsel.").

Moreover, even if the performance of defendant's trial counsel were considered deficient because a specific unanimity instruction was required on these facts under *Jenness*, defendant is still not entitled to a new trial because he has not demonstrated the requisite prejudice. BNC provided clear testimony of incidents of oral penetration by defendant, and it is evident from the jury's verdicts on the counts related to her that it found her testimony credible while determining that the incidents happened when she was 16 years of age or older. The record evidence supports a conclusion that defendant committed all of the oral penetrations by defendant's penis about which BNC testified, and the jury reasonably could have unanimously agreed that he committed all of those penetrations. Defendant's contention that the jury may have split on which act justified their verdict is purely speculative. Defendant has failed to demonstrate that there is a reasonable probability, sufficient to undermine our confidence in the outcome, that the jury would not have unanimously agreed on an occurrence of fellatio to support the conviction on Count V had a specific unanimity instruction been given. *Strickland*, 466 US at 694.

Defendant next argues that trial counsel was ineffective for failing to object to testimony by Detective Randy Reinstein about general forensic interview techniques used by the Child Advocacy Center, which interviewed the complainants in this case.

At trial, Detective Reinstein was asked questions about the investigation in this case, and he was asked why children in sexual assault cases generally are not interviewed by detectives—Detective Reinstein explained:

> Well us as police can be very direct and sometimes when you're direct and ask a question you get—you almost lead them in a way. We're good at interviewing adults and possible bad guys and criminals, but when it comes to children you need somebody that that's what they do. They talk to little kids in a manner that they're not led. And it's a team effort so it's just us, Adult Protective Services was there, CPS was there, Prosecutor's Office was there so it's a team concept that we've been doin' for years now. Back in the day we would interview 'em. It just wasn't a good interview. You would get a lot false information comin' back to you. But in this setting they let the—the kids do the talkin' and they don't ask them those leading questions like police officers do.

There was no objection to this testimony. Defendant argues on appeal that his trial counsel should have objected and had this testimony excluded on the ground that the testimony was inadmissible expert testimony because the detective had not been qualified as an expert under MRE 702. Assuming without deciding that defendant is correct on appeal that defendant's trial counsel performed deficiently in this regard, defendant has failed to demonstrate the necessary prejudice. The above testimony was extremely general and did not include any mention of the specific interviews of the complainants in this case. Moreover, it was less specific than the testimony that had already been given earlier in the trial by CPS investigator, Gabrielle Loew regarding the Child Advocacy Center and forensic interview techniques. On this record, defendant has not shown that there is a reasonable probability that but for the lack of objection to this testimony by Detective Reinstein, the result of the trial would have been different. *Strickland*, 466 US at 694. Defendant has not shown that he received ineffective assistance of counsel on this ground. *Id*. at 700 ("Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim.").

In reaching this conclusion, we note that the instant case is clearly distinguishable from *People v Hawkins*, 507 Mich 949; 959 NW2d 179 (2021), on which defendant relies. In *Hawkins*, our Supreme Court vacated the defendant's convictions based on ineffective assistance of counsel based on the failure to object to testimony by a police officer regarding forensic interviewing. However, the similarities between *Hawkins* and the instant case end there. In *Hawkins*,

> the prosecution called a police detective who testified that he had years of experience investigating child sexual assault cases, that he was trained in forensic interviewing of child sexual assault complainants, and that he had conducted hundreds of such interviews over the course of his career. The detective then testified that the complainant's demeanor during her interview was consistent with that of a typical child sexual assault victim and that, given his specialized training, the complainant's testimony "seemed authentic to [him]." In addition, the detective testified that he tried but was unable to find inconsistencies in the complainant's allegations, stating, "[I]f I can't prove that [the abuse] didn't happen, then there's a good possibility that it did," seemingly shifting the burden of proof to defendant to prove his innocence. The detective also testified that, on the basis of his investigation, he found defendant's suggestion that the complainant made up the abuse allegations to get her father's attention to be "[n]ot true." As the Court of Appeals in this case recognized, this testimony by a police officer witness improperly vouched for the complainant's credibility and improperly commented on the defendant's guilt. . . .
>
> . . . On the facts of this case, and given the nature of the detective's testimony, there is a reasonable probability that the wrongful admission of the testimony affected the outcome of the trial. [*Id*. at 949 (alterations in original).]

In the present case, Detective Reinstein's testimony was nothing like the improper vouching testimony in *Hawkins*, with respect to either its content or detail. *Hawkins* does not compel a conclusion that defendant in this case received ineffective assistance of counsel regarding Detective Reinstein's testimony.

Next, defendant argues that his trial counsel was ineffective for failing to object to certain testimony by Detective Ryan Strunk about the search of defendant's cell phone.

Detective Strunk testified that he searched defendant's cell phone pursuant to a search warrant and that he had been instructed to look for "possible child pornography" and "anything else that would be along those lines." He discovered that defendant's recent Google search history included searches for the penalty for statutory rape in Michigan, the penalty for a first-time sex offender, and whether an attorney was needed for a preliminary exam. Detective Strunk was further asked what statutory rape is, and he responded, "I guess raping somebody who's not necessarily of age, but kind of changes the age of it so to speak." He also testified that no child pornography or other incriminating material was found on the device.

Detective Strunk's testimony was extremely brief in the context of a three-day trial. He clarified that no child pornography was found on the phone, and defendant's trial counsel argued during closing arguments that a person faced with potential criminal charges would naturally seek information related to his legal rights, which is not wrong and does not demonstrate guilt. Additionally, the concept of statutory rape, at least in the general terms described by Detective Strunk, is common knowledge even though the legal nuances of the criminal sexual conduct statutes is not. There was no reason for the prosecution to ask such a question.

Nonetheless, the jury was instructed by the judge on the law regarding the criminal sexual conduct charges, and the judge further instructed the jury to follow the court's instructions on the law. Defendant spends more words in his appellate brief complaining about his speculative theories on the allegedly catastrophic damage done by Detective Strunk's testimony than Strunk spent putting his testimony on the record.[5] Yet, defendant entirely fails to provide any cogent analysis of how such minimally relevant or probative evidence could have any substantial effect on the jury *when considered in light of the complainants' unequivocal testimony about defendant's sexual acts.[6]* Defendant's appellate argument completely ignores the strength of the victims' testimony and essentially contends that the jury was likely to convict based on Detective Strunk's comments about defendant's phone rather than based on the testimony by the victims of numerous instances of sexually assaultive conduct. The jury was specifically instructed that it must not convict on the basis that it believed defendant committed other bad conduct for which he was not on trial. "[J]urors are presumed to follow their instructions . . . ." *People v Unger*, 278 Mich App 210, 235; 749 NW2d 272 (2008).

Assuming without deciding that this challenged testimony by Detective Strunk, was inadmissible and that trial counsel performed deficiently by not having it excluded, defendant has failed to show a reasonable probability that the outcome of the trial would have been different and

---

[5] We note that an ineffective assistance of counsel claim is not intended to be a vehicle for "a second trial, this one of counsel's unsuccessful defense." *Strickland*, 466 US at 690.

[6] "[A] court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." *Strickland*, 466 US at 695. On appeal, defendant improperly focuses on relatively trivial pieces of evidence and treats them in isolation, entirely ignoring their impact in light of the totality of the evidence.

is thus not entitled to relief on this ineffective assistance of counsel claim. *Strickland*, 466 US at 694, 700.

### III. HEARSAY

Defendant next argues that the trial court abused its discretion by admitting CPS investigator Loew's testimony about her forensic interview with SAC under the excited-utterance exception to the rule against hearsay.

"The decision whether to admit evidence is within the trial court's discretion, which will be reversed only where there is an abuse of discretion." *People v Gursky*, 486 Mich 596, 606; 786 NW2d 579 (2010). "However, decisions regarding the admission of evidence frequently involve preliminary questions of law, such as whether a rule of evidence or statute precludes admitting of the evidence. This Court reviews questions of law de novo." *Id*.

Under MRE 803(2), a "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition" is "not excluded by the hearsay rule, even though the declarant is available as a witness." "To qualify as an excited utterance, two requirements must be satisfied. First, there must be a startling event, and, second, the resulting statement of the declarant must be made while under the excitement caused by that event." *People v Straight*, 430 Mich 418, 423-424; 424 NW2d 257 (1988). Our Supreme Court has also provided three specific criteria for a statement to fall within the excited utterance exception: the statement must "arise out of a starting occasion," be "made before there has been time to contrive or misrepresent," and "relate to the circumstances of the startling occasion." *Id*. at 424 (quotation marks and citation omitted).

Here, Loew testified that she arrived at the police department to interview SAC on the evening she ran away. Loew described SAC's demeanor as initially "sullen and down," but she further indicated that SAC became "hysterical" when introduced to Loew. Before Loew arrived, SAC had already recently made disclosures of abuse to her boyfriend and a police officer. Outside the presence of the jury, defendant's trial counsel argued that SAC's statements from her interview with Loew could not be admitted because they were not excited utterances. The trial court disagreed and permitted Loew to testify about the interview. Loew testified that SAC described "years worth of sexual abuse" by defendant, including digital penetration of her vagina, attempts to have sex with her in the library of the house on Capital Avenue, and fellatio. Further, Loew testified that during the interview, SAC was very upset, was crying very hard, was breathing very hard, and was very tense.

This interview occurred in 2019, but it involved disclosures of sexual abuse from five or more years earlier according to Loew's testimony. SAC was 17 years old at the time of the interview. Clearly, SAC was under stress at the time of the interviews, and she had many good reasons for being under severe stress. However, with respect to the statements that the prosecution sought to admit about the sexual abuse she suffered, SAC was not still under stress directly from those particular incidents that occurred at unspecified times in the past. Accordingly, these statements did not fit within the excited utterance exception in MRE 803(2) because SAC was not still "under the stress of excitement *caused by the event or condition*" to which her statements

related. MRE 803(2) (emphasis added); see also *Straight*, 430 Mich at 424. The trial court erred by allowing Loew to testify about SAC's statements. *Gursky*, 486 Mich at 606.

However, this does not end the analysis. "No judgment or verdict shall be set aside or reversed or a new trial be granted by any court of this state in any criminal case, on the ground of . . . the improper admission or rejection of evidence . . . unless in the opinion of the court, after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice." MCL 769.26.

Here, SAC's testimony at trial was significantly more detailed in describing the incidents of sexual penetration than Loew's testimony, which was much more general. Moreover, all the victims' testimonies presented a substantially similar pattern of behavior by defendant. The "scale" in this case was not simply one victim's credibility versus defendant's credibility—Loew's testimony was not the only other testimony that repeated defendant's behavior to the jury. Defendant has failed to meet his burden of demonstrating that it is more probable than not, in light of the untainted evidence on the entire record, that a different outcome would have resulted without this error; reversal is therefore not required. *People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999).

## IV. DOUBLE JEOPARDY

Defendant next argues that the trial court erred by denying his motion for a directed verdict on Count VIII. Defendant maintains that there was insufficient evidence to distinguish Count VII and Count VIII from one another such that the jury convicted him of two offenses based on the same conduct, violating the Due Process and Double Jeopardy Clauses.

"This Court reviews de novo questions of law, such as a double jeopardy challenge." *People v Gibbs*, 299 Mich App 473, 488; 830 NW2d 821. We also review de novo a defendant's claims regarding the sufficiency of the evidence and constitutional due-process violations. *People v Hawkins*, 245 Mich App 439, 457; 628 NW2d 105 (2001).

Counts VII and VIII charged defendant with CSC-I for committing the act of fellatio with BMC, who was at least 13 but less than 16 years old and related by affinity. Defendant moved for a directed verdict on Count VIII, arguing that the prosecutor did not present sufficient evidence to sustain two counts of fellatio involving BMC because BMC only testified about one instance of this act. The trial court denied defendant's motion, reasoning: "[I]n my notes . . . regarding [BMC] that I wrote one plus, because she used the term suck on a penis and she said more than once." During the trial, BMC had testified that in the library of the Capital Avenue house, defendant "made" her "suck his penis" and that sometimes this would occur after defendant made her "watch porn." The prosecutor then continued to question BMC as follows:

> *Q.* So when we use the term porn, what does that mean?
>
> *A.* Like a guy and girl having sex.
>
> *Q.* Were these similar acts to what you did to him as far as sucking his penis?

-11-

*A.* Yes.

*Q.* Do you recall how many years or how long you lived at the Capital house?

*A.* It was somewhere between a year and a half to two years.

*Q.* The act that you just described to me as far as sucking his penis, did that happen more than one time at Capital?

*A.* Yes.

*Q.* And did that happen in the same room?

*A.* Yes.

*Q.* Did it happen in any other room?

*A.* Not that I remember.

On appeal, defendant argues that the prosecution did not present evidence of two factually separate acts of fellatio to justify the two separate charges in Count VII and Count VIII on which the jury convicted defendant. "Both the United States and the Michigan constitutions protect a defendant from being placed twice in jeopardy, or subject to multiple punishments, for the same offense." *People v McGee*, 280 Mich App 680, 682; 761 NW2d 743 (2008), citing US Const, Am V; Const 1963, art 1, § 15. Here, BMC testified that defendant penetrated her mouth on multiple occasions with his penis. The Legislature intended to separately punish each criminal sexual penetration, and convictions for each such penetration supported by the evidence do not violate double jeopardy. *People v Matuszak*, 263 Mich App 42, 50; 687 NW2d 342 (2004). Defendant has not shown error requiring reversal.

## V. SENTENCING

Defendant next argues that resentencing is required because the trial court incorrectly assessed 50 points for offense variable (OV) 11, resulting in an elevated sentencing guidelines range.

Under the sentencing guidelines, we review de novo a trial court's "application of the facts to the law" to determine "[w]hether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). We review the trial court's factual determinations, used for sentencing under the sentencing guidelines, for clear error, and those determinations must be supported by a preponderance of the evidence. *Id*.

OV 11 refers to criminal sexual penetration. MCL 777.41. For OV 11, 50 points are to be assessed if "[t]wo or more criminal sexual penetrations occurred," MCL 777.41(1)(a), and 25 points are to be assessed if "[o]ne criminal sexual penetration occurred," MCL 777.41(1)(b). If "[n]o criminal sexual penetration occurred," then zero points are to be assessed. MCL

777.41(1)(c). In scoring OV 11, a court must consider "all sexual penetrations of the victim by the offender arising out of the sentencing offense." MCL 777.41(2)(a). "Multiple sexual penetrations of the victim by the offender extending beyond the sentencing offense may be scored under offense variables 12 or 13." MCL 777.41(2)(b). The statute instructs, "Do not score points for the 1 penetration that forms the basis of a first- or third-degree criminal sexual conduct offense." MCL 77.41(2)(c).

Vaginal penetration, fellatio, and cunnilingus are separate penetrations for the purpose of OV 11. *People v Johnson*, 298 Mich App 128, 132; 826 NW2d 170 (2012). Additionally,

> [T]he Michigan Supreme Court has defined arising out of, as used in MCL 777.41, as something that springs from or results from something else, has a connective relationship, a cause and effect relationship, of more than an incidental sort with the event out of which it has arisen. Accordingly, this standard requires more than the mere fact that the penetrations involved the same defendant and victim. [*Id.* (quotation marks and citations omitted).]

In this case, OV 11 was assigned 50 points on all counts—defendant objected to this assignment, arguing that "multiple penetrations must occur during a single incident" for OV 11 to be assigned 50 points. The prosecutor argued that defendant's other convictions for additional sexual penetrations justified scoring 50 points on each count. The trial court determined as follows:

> Well the—the testimony—I heard the testimony during the course of the trial. This was something that was happening repeatedly. They did testify to some specific incidences that they recalled, but also indicated this was something that had been going on for a long time and beyond just the charged instances that occurred.
>
> 50 points on OV 11 is—is appropriate in my mind. The appellate courts may disagree. If they do I'll readdress it. But I believe based on the facts it's appropriately scored.

The evidence in this case did not clearly state that multiple penetrations occurred during a single incident. Therefore, defendant's pattern of sexual predation against his stepdaughters would appropriately be considered under OV 13. See MCL 777.41(2)(b); MCL 777.43. In this case, OV 13 was already assigned 25 points for defendant's continuing pattern of criminal behavior. The trial court erred in its ruling on OV 11.

This error warrants resentencing. Defendant's sentencing guidelines recommendation— for the four counts of CSC-I—was 135 to 225 months in prison. See MCL 777.16y; MCL 777.62. Additionally, defendant's sentencing guidelines recommendation—for the three counts of CSC-III—was 57 to 95 months in prison. See MCL 777.16y; MCL 777.63. The trial court sentenced defendant, outside the recommended guidelines range, to serve (1) four concurrent terms of 25 to 60 years for the CSC-I charges, and (2) three concurrent terms of 95 to 180 months for the CSC-

III charges. However, if the 50 points for OV 11 are deducted, defendant's sentencing guidelines recommendation—for the four counts of CSC-I—would be reduced to 81 to 135 months, see MCL 777.62, and defendant's sentencing guidelines recommendation—for the three counts of CSC-III—would be reduced to 51 to 85 months, see MCL 777.63.

This correction produces a lower guidelines range, which entitles defendant to resentencing. See *People v Lutz*, 495 Mich 857; 836 NW2d 680 (2013); *People v Francisco*, 474 Mich 82, 91-92; 711 NW2d 44 (2006). "On remand, should the trial court decide to again depart from the corrected sentencing guidelines range, it shall articulate a rationale justifying the extent of the particular departure." *Lutz*, 495 Mich at 857; *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015) (stating that "sentencing courts must justify the sentence imposed in order to facilitate appellate review").

Defendant next argues that subjecting him to lifetime electronic monitoring constitutes cruel or unusual punishment, as well as an unreasonable search.

MCL 750.520n(1) provides that a defendant, 17 years old or older, convicted of CSC against an individual, less than 13 years of age, shall be sentenced to lifetime electronic monitoring. Under MCL 750.520b(2)(d), "[i]n addition to any other penalty imposed under subdivision (a) or (b), the court shall sentence the defendant to lifetime electronic monitoring under section 520n." Our Supreme Court has thus held that "the Legislature has mandated lifetime electronic monitoring for all CSC–I sentences except when the defendant is sentenced to life without the possibility of parole under § 520b(2)(c)." *People v Comer*, 500 Mich 278, 289; 901 NW2d 553 (2017). "There is no provision in the statute for any kind of discretion with respect to, review of, or relief from the required monitoring." *People v Hallak*, 310 Mich App 555, 568; 873 NW2d 811 (2015), rev'd on other grounds 499 Mich 879 (2016).

This Court has previously rejected the argument that lifetime electronic monitoring constitutes cruel or unusual punishment, as well as the argument that lifetime electronic monitoring is an unreasonable search. *Id*. at 577, 581. Considering that defendant did not raise this issue below, and in light of this Court's caselaw, defendant has not demonstrated plain error requiring reversal. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

We affirm defendant's convictions, but vacate defendant's sentence and remand for resentencing. We do not retain jurisdiction.

/s/ Stephen L. Borrello
/s/ Brock A. Swartzle
/s/ Sima G. Patel